# WHEELING.

## REID *et ux. v.* STUART'S EX'OR.

Submitted January 19, 1881—Decided October 14, 1882.

(\*SNYDER, JUDGE, Absent.)

1. As a general rule the plaintiff in a chancery cause can abandon his cause at his pleasure ; and if having this right he dies, his representatives, heirs or administrators or both, to whom his interest survives, may revive the cause either by bill of revivor or by statutory modes ; and they alone and not the defendants have a right in such case to have the cause revived. (p. 392.)

2. But when the defendants have acquired such an interest in the cause, that the plaintiff would not be allowed to dismiss it at his pleasure, as where there has been an order of reference in the cause, such that, if a balance should be found in favor of the defendant, he would be entitled to a decree against the plaintiff, and in that stage of the cause the plaintiff dies, the defendant will have a right to revive by bill of revivor or by statutory modes. (p. 392 )

3. If in such a case the defendant files, what he styles a petition, but which has in it all the allegations, which would be necessary to be made in a bill of revivor, and prays, that the cause may be revived in the names of the proper representatives of the deceased plaintiff, the court will regard this as a bill of revivor, though it be styled a petition. (p. 393.)

4. Though a chancery cause may be revived by motion or *scire facias,* the Appellate Court would not regard as error, for which the judgment should be reversed, the overruling of a demurrer to a bill of revivor and the revival of the cause in that manner by the court below, it being really unimportant, in which mode the cause is revived, if the parties asking the revival had a right to have it revived. (p. 392.)

Appeal from an order of the circuit court of the county of Greenbrier made on the 6th day of November, 1879, and from a decree of said court rendered on the 17th day of June, 1880, with a *supersedeas* to a part of said decree, in a cause in said court then pending, wherein William B. Reid and Elizabeth Reid, his wife, were plaintiffs, and William R. Stuart and John Stuart, executors of Elizabeth Stuart, de-

---

\*Cause submitted before Judge S. took his seat on the bench.

ceased, were defendants, allowed upon the petition of R. H. Gillilan, administrator of W. B. Reid.

Hon. Homer A. Holt, judge of the eighth judicial circuit, made the order and decree appealed from.

Green, Judge, furnishes the following statement of the case:

Elizabeth Stuart owned a large estate real and personal. She had three children, John Stuart, W. R. Stuart and Elizabeth, who intermarried with Wm. B. Reid.  She made provision and advancements to her son, Wm. R. Stuart, sometime prior to 1856; and in November 1856 she divided her property real and personal, or a large portion of it, among her other two children, John Stuart and her daughter Elizabeth; and in consideration thereof it was understood, that they were to pay her debts equally, though there was no distinct contract of this character, and she thereafter lived with her daughter and her husband Wm. B. Reid.  She did not however in this division of her property make deeds to her children, though she put them in possession of their respective shares.  In July, 1879, Mrs. Elizabeth Stuart died leaving a will, in which she appointed her two sons and her son-in-law her executors.  Her sons only qualified as her executors.  By her will she made certain specific bequests and devises; and the legatees and devisees received and took possession of their specific bequests and devises.  But she died possessed of certain personal estate, which she had not by her will bequeathed, and which, after her debts were paid, were to be distributed among her children.

After the division of her property made by Mrs. Stuart in her lifetime, and while she was living with her son-in-law, Wm. B. Reid, he purchased October 7, 1858, at a sale made by the administrators of the personalty of one Charles McClung property to the amount of two hundred and eighty-three dollars and nineteen cents.  A bond was drawn for the amount payable to the administrator and two seals attached.  Mrs. Elizabeth Stuart signed her name to the second seal designing to go security on this bond; but Wm. B. Reid her son-in-law instead of signing his name opposite

to the first seal signed his name under Mrs. Stuart and added a seal opposite his name. He contended, that he purchased this personal property as the agent of Mrs. Elizabeth Stuart, and that she was the principal in this bond, and he but the security. After her death suit was brought on this bond by McClung's administrator; and thereupon Wm. B. Reid and his wife brought this suit against Wm. R. Stuart and John Stuart, executors of Elizabeth Stuart, for a settlement of their accounts as such executors and a distribution of the estate undisposed of by her will.

In his bill he says, that in this bond to McClung's administrator he was but the security of Elizabeth Stuart; that there were ample funds in the hands of the executors to pay this debt, but they refused to pay it and permitted him to be harassed by this suit on this bond. The prayer of the bill is, that these executors be decreed to pay this debt, and that their accounts as executors may be settled, and the estate may be properly distributed among the three distributees. This bill was filed in the circuit court of Greenbrier May 18, 1863. The executors answered it and in their answer claim, that this debt due to the administrator of McClung was due from Wm. B. Reid, the plaintiff, and that Elizabeth Stuart was only security in the bond given therefor. On September 1, 1863, the court referred the cause to a commissioner to settle the accounts of these executors; but as the war was then pending, little or nothing was done by the commissioner under this order of reference. On September 19, 1871, John Stuart, one of the executors of Elizabeth Stuart, paid on an execution against said executors this McClung debt amounting then to five hundred and eighteen dollars and ninety-seven cents. And after that Elizabeth Reid, the female plaintiff in this cause, died and her husband, the male plaintiff, on January 11, 1877, obtained from the circuit court of Greenbrier an order reviving this cause in the name of himself as administrator of his deceased wife, and directing the cause to be proceeded with in his own right and as administrator of his deceased wife; and at the same time he obtained from the court an order again referring this cause to a commissioner to settle the accounts of the executors of Elizabeth Stuart, ascertain all the debts due from or to the estate of

Elizabeth Stuart deceased. The commissioner gave notice of the time and place of executing this decree and fixed on the 6th of March, 1877, as the time and his office as the place. On that day five depositions were taken by the commissioner and among them the depositions of Wm. B. Reid; and two days afterwards two other depositions were taken before this commissioner. Subsequently, in May, 1877, three other depositions were taken before this commissioner, and one other in October, and two others in November, 1877.

Before any report was made by this commissioner, Wm. B. Reid, then the sole plaintiff in this suit, died; and on June 18, 1878, the defendants, the executors of Elizabeth Stuart, filed a petition, in which these facts are stated and that his administrator and heirs refused to revive this cause; that he died largely in debt but owning valuable real estate, which must be subjected to the payment of his debts; that some of the witnesses whose depositions had been taken had died; and that there would be a balance due them from Wm. B. Reid on the settlement of the account, which had been ordered; but if this suit was not revived, their claim against Wm. B. Reid, if a new suit had to be brought for it, would be barred by the statute of limitations. They ask, that Wm. B. Reid's heirs and administrator may be made defendants to this petition and required to answer it; that the cause might be revived, and the land, of which Wm. B. Reid died seized, might be sold to satisfy the balance due them, and for general relief.

Two of the heirs of Wm. B. Reid non-residents appeared and demurred to this petition and also filed their answer. The demurrer is based on the ground, that the defendants could not have this suit revived on the death of the plaintiff, but only the representatives of the plaintiff, and they declined to do so; and secondly, that the pleadings in the cause did not justify the relief asked in the petittion. The answer insists, that it would be unjust to revive this cause against them after the unreasonable delay, which had occurred in the prosecution of the cause. On November 6, 1879, the court decided, that the defendants, in the original cause had a right to have it revived in the name of the administrator and heirs of Wm. B. Reed by a bill of revivor, and that their

said petition might well subserve the purpose of such bill of revivor; and the court overruled said demurrer and ordered the cause to be so revived, and ordered a commissioner to take, state and report the accounts, which had been before ordered to be taken, giving reasonable notice of the time and place of taking the same.

On January 15, 1880, the commissioner made his report under this order; and in it he states, that the evidence establishes the facts, which we have hereinbefore stated to have existed, when this suit was brought, and the payment by one of the executors of this McClung debt on September 19, 1871, which the commissioner reports was really the debt of Wm. B. Reid. He states in his report, that the attorney for Reid's heirs relying on the case of *Trimyer* v. *Pollard*, 5 Gratt. 460, pleads the statute of limitations on this debt as it had accrued to Mrs. Stuart's executors pending this suit in 1871, and no action had been brought to recover it, nor was it filed in this cause as a claim till 1877; and the commissioner expresses the opinion, that this claim and some others in like position are barred by the statute of limitations; but states the accounts in both ways, leaving it for the court to determine, whether this claim is barred.

The administrator and heirs of Wm. B. Reid filed exceptions to this report, as follows:

"First—Vouchers Nos. 5 and 8 in the executorial account are notes given by John Stuart after the death of testatrix. The charges made on these vouchers are, therefore, improperly credited to the executors.

"Second—If Mrs. Stuart had divided her property and delivered it to her children in 1856, as the defendants prove was the case, voucher 10 should be paid by the children and not by her estate; therefore, this item of two hundred and seventy-two dollars and twelve cents has been improperly credited to executors.

"Third—Vouchers Nos. 19 and 22 are not proved to be the debts of the testatrix. The executors who have improperly paid these debts are not competent witnesses to prove them against the estate of W. B. Reid, deceased. The debts shown by voucher No. 64 is improperly allowed for the same reason.

"Fourth—The debts represented by vouchers Nos. 49, 50, 51 and 58 are the debts of John Stuart. They are certainly not claims against the estate of the testatrix, as they show on the face that they relate to transactions with John and the other heirs of the estate.

"The debt of five hundred and eighteen dollars and ninety-seven cents, claimed to have been paid by the executors to Charles McClung's administrator Sept. 19, 1871, has no connection with this suit, and has been improperly reported by the commissioner. This is not a suit to settle the estate of W. B. Reid. It is a suit to settle the estate of Mrs. Elizabeth Stuart. If said claim had any validity, it should have been filed in the suit of *A. L. Elliott & als.* v. *W. B. Reid's administrator & als.*, which was a creditors' suit to settle said Reid's estate. In this latter suit a report of all the debts of said Reid has been made and confirmed, and this debt could not now be allowed if it were a proper debt, but it never was due from Reid; it is also barred by the statute of limitations.

"The 'scoop net' of John Stuart's debts, aggregating seven thousand six hundred and eighty-seven dollars and seventy-seven cents, appended to said report, presents the modest merit of reckless grabbing without any hope of success. None of these claims were ever due, either from Elizabeth Stuart or W. B. Reid; but what they have been reported in this suit for, it is impossible to say. Even if this were a suit to settle Reid's estate, and said debts, or either of them, were due from Reid, they are each and all of them barred by the statute of limitations."

The depositions were returned with this report, which had been taken, when the cause was formerly before the commissioners in the lifetime of Wm. B. Reid, and also the depositions taken since his death. There were no exceptions for want of notice to the depositions, which were taken on the 6th and 8th of March 1877; but there were such exceptions to those taken in the lifetime of Wm. B. Reid and after March 8, 1877; and it was proven, that he was aware of their being taken and stated, that he did not care to be present, and the deposition might be taken at any time the other side thought proper, as he relied on the statute of limitations as a bar to any claim against him. In the opinion will be stated so

much of what is proven by these depositions, as is necessary, in order to understand the merits of the case, as also so much of the vouchers referred to in the above exceptions, as will enable us to understand the merits of these exceptions.

On June 17, 1880, the court heard this cause with another cause then pending in the circuit court of Greenbrier, *A. L. Elliott & Co.* v. *Wm. B. Reid's adm'r et als.*, which was a creditor's bill to subject the estate both personal and real of Wm. B. Reid to the payment of his debts; and it rendered a decree, which it is deemed unnecessary to set forth at length; but it will here suffice to state, that it was based on the assumption, that the five hundred and eighteen dollars and ninety-seven cents paid on the McClung debt on August 1, 1871, by one of the executors of Elizabeth Stuart was a proper charge in this cause against Wm. B. Reid, as this was his debt, and that it was not barred by the statute of limitations, and on the assumption, that the debts named in the third and fourth of the above exceptions were the debts of Elizabeth Stuart excepting only the one represented by voucher No. 64; and that the credits named in the first and second of said exceptions were properly given to the executors. The nature and merits of these exceptions and of the action of the court on them will be explained in the opinion.

On the petition of the administrator and heirs of Wm. B. Reid an appeal was allowed from the order of November 6, 1879, and an appeal from the decree of June 17, 1880, and a *supersedeas* to a part of said decree.

*A. C. Snyder* for appellant cited the following authorities: 16 N. J. Eq. 110; 1 Bosw. 671; 16 How. Pr. 337; 2 Barb. 373; 22 Gratt. 748; 1 Tur. & R. 224; Code ch. 126 § 9; 5 Gratt. 460; 11 W. Va. 307.

*Price & Preston* and *Dennis & Dennis* for the appellees cited the following authorities: Code ch. 127, § 4; 13 Gratt. 233.

Green, Judge, announced the opinion of the Court:

The first question presented by this record is, whether the circuit court erred in its order of November 6, 1879, directing this cause to be revived in the name of the administrator and heirs of Wm. B. Reid. The occasion of filing

the original bill by Wm. B. Reid and his wife against the executors of Elizabeth Stuart was, that Elizabeth Stuart and Wm. B. Reid on Oct. 7, 1858, had executed to the administrator of Charles McClung their bond for two hundred and eighty-three dollars and nineteen cents payable in twelve months for purchases of personal property bought at the sale made by the administrator of Charles McClung of personal property, of which he was the owner at his death. These purchases the executors of Elizabeth Stuart claimed were made by Wm. B. Reid for himself, and that his mother-in-law, Mrs. Elizabeth Stuart, was simply his security in this bond. Wm. B. Reid on the contrary claimed, that he made these purchases for Mrs. Elizabeth Stuart and simply as her agent, and that she was the principal in this bond, and he was simply her security. The difficulty no doubt arose out of the fact, that Mrs. Elizabeth Stuart was then living with her son-in-law, Wm. B. Reid, and he claimed, that he was acting as her general agent; while her executors claimed, that she had distributed her property both real and personal among her children ; and that Wm. B. Reid in making these purchases at the sale of the property of Charles McClung was buying the same for himself and not for his mother-in-law, who then had no sort of use for property of this description. This was the dispute between the parties, out of which this suit arose.

The administrators of Charles McClung having in 1863 sued Wm. B. Reid on this bond, he brought this suit against the executors of Elizabeth Stuart for a settlement of their accounts as such executors, and complaining specially of the refusal of the executors of Elizabeth Stuart to pay this bond and of their permitting him, a mere security to be harassed by this suit on this bond, while the executors of Elizabeth Stuart had ample funds in their hands to pay this debt. The bill specially prayed, "that the executors be ordered to pay off said debt of two hundred and eighty-three dollars and nineteen cents." The executors of Elizabeth Stuart promptly answered this bill, and in their answer alleged, that this debt to the estate of Charles McClung was not contracted by their testatrix, Elizabeth Stuart, but by the plaintiff, Wm. B. Reid, for purchases for himself at the sale of the personal

estate of Charles McClung; and that he improperly endeavored by signing his name to the bond under the name of Elizabeth Stuart to give to it the appearance of his being a surety in the bond, when it was understood, that he was principal in it, and the seal which was left above the name of Mrs. Elizabeth Stuart was the one opposite to which he ought to have signed his name instead of attaching a new seal and signing his name below hers, leaving no name opposite the first seal. The respondents also allege, that of their own personal knowledge Mrs. Elizabeth Stuart was but security in this bond, she having so stated in her lifetime to one of the executors.

On September 1, 1865, the cause was by a decree of the court referred to a commissioner to settle the executorial accounts of the executors of Elizabeth Stuart. The war then pending, little or nothing was done under this order; and the wife of Wm. B. Reid dying, on his motion it was ordered, that the cause be revived in his name as administrator of his wife and prosecuted by him as plaintiff in his own right and as administrator of his wife, and not noticing the former order of reference the cause was again referred to the same commissioner to settle the executorial accounts of the executors of Elizabeth Stuart and also to report all debts due from her, which remained unpaid. Thus in effect requiring an investigation by the commissioner, as to whether this debt due to McClung's estate was a debt of Elizabeth Stuart or of Wm. B. Reid. This order was made on January 11, 1877, but long before it was made, on September 19, 1871, one of the executors of Elizabeth Stuart had paid this debt; and before the commissioners he sought in settling the accounts between them and Wm. B. Reid to have it charged to said Reid; and depositions were taken on the question, whether this McClung debt was a debt of Wm. B. Reid, on which Mrs. Elizabeth Stuart was surety, or the reverse. The weight of the testimony, even if we exclude the depositions, which were taken without notice, was, that this was a debt of Wm. B. Reid, and if those depositions, which were taken without notice, were read this conclusion would be much strengthened. It is unnecessary to determine definitely whether these latter depositions should be considered. The

commissioner did not under this order of reference finish his investigation or report to the court; and it was not improbable, that he continued the cause regularly before him from day to day or from time to time, as was regular and proper; and if so, these later depositions would be properly taken without any special notice, especially as it appears, that Wm. B. Reid at the time was informed, that they were being taken and said, he did not want to be present, as he relied on the statute of limitations to protect him against this McClung debt, which the executors had paid more than five years before.

In this stage of the case Wm. B. Reid died and his administrator and heirs declined to have the cause revived in their name as plaintiffs; and thereupon the defendants, the executors of Elizabeth Stuart, filed a petition asking, that the court would order the revival of the cause in the names of these representatives of the deceased plaintiff, and that the cause might be proceeded in to a final decree. This petition was demurred to, but the demurrer was overruled, and the court ordered, that the cause be revived in the name of the administrator and heirs of Wm. B. Reid and proceeded in to a final hearing, and recommitted the cause to a commissioner to take and report the accounts formerly ordered.

Before the passage of any statute law when a sole plaintiff died intestate his representative, his administrator or heirs, as the case might be, or both if each were interested, had a right by a bill of revivor to revive a cause in equity and proceed in it to a final decree. But in such a case this right of revival, if the cause of action itself survived, was in the case put absolute, and the parties filing the bill had only to prove that they were the representatives of the deceased, if this were denied, and the cause was as a matter of course revived. Both in England and in the various States of this Union it was therefore wisely considered by the Legislatures, that in such a case it was entirely unnecessary to require the representatives of the deceased plaintiff to file a formal bill of revivor, and that a simple motion with or without notice or a *scire facias* to revive the cause was all that was necessary to effect all the objects of a formal bill of revivor. In such case under the statute law of Virginia in existence prior to 1810 on the

decease of the plaintiff his representative might revive a chancery cause by *scire facias* without filing a formal bill of revivor; and this statute has been ever since continued as law both in Virginia and in this State.   See *Vaughn et ux.* v. *Wilson's Ex'or*, 4 H. & M. 480; 1 R. C. of Va. of 1819 p. 497 § 38;  Code of Va. 1873 ch. 167 § 4;  Code of W. Va. ch. 127 § 4.  And in case of the plaintiff's death it was provided by act of Virginia passed March 7, 1826, see Sup. of Rev. Code p. 130 and 178, that in a suit in equity, if the plaintiff died, the cause might, unless cause be shown to the contrary, be revived in the name of his administrator or heir, &c., on motion without any notice; and this has continued the statute law both of Virginia and West Virginia.  Code of Va. 1873 ch. 167 § 4; Code of W. Va. ch. 127 § 4.

While under these statutes a bill of revivor has long been disused in Virginia and in West Virginia and indeed in England and in the various States of this Union, yet there is nothing in our statute-law, which prevents it from being used, if the parties ·entitled to revive a chancery cause where the plaintiff dies choose to resort to their bill of revivor.   As a general rule the plaintiff in a chancery suit can abandon his cause at his pleasure, and if having this right he dies, his representative, either heir or administrator, to whom his interest survives, may revive the suit if he pleases, but of course in such a case he alone can revive it either by the bill of revivor or in the statutory mode.   But when the defendants have acquired such an interest in the cause that the plaintiff would not be allowed to dismiss the cause at his pleasure, or where there has been such an order of reference in the cause as that, if a balance should be found in favor of the defendant, he would be entitled to a decree against the plaintiff, and in that stage of the cause the plaintiff dies, the defendant would have a right to revive by bill of revivor or by statutory modes.   See *Benson* v. *Wolverton,* 16 N. J. Eq. 110; *Keen* v. *LaFarge,* 1 Bosw. 672 and 16 How. Pr. 377 ; *Banta* v. *Marcellus,* 2 Barb. 373; see also *McDaniel* v. *Baskervill,* 13 Gratt. 233.

The courts of Virginia and of this State have always shown the greatest liberality in construing any paper filed by the plaintiff as a bill or petition,  whenever it sets forth

facts which show a proper ground for relief, in entire dis-
regard of the name by which the pleader has styled the
paper.    Thus in *Laidley* v. *Merrifield*, 7 Leigh 346.    The
bill was styled a bill of review and was in that form, yet
it was held to be a supplemental bill in the nature of a bill
of review and petition for rehearing, as this was the proper
form of proceedings on the facts stated in this so-called
bill of review.    The court in such a case regards the
substance and not the form and will treat it as a bill or
petition, as the nature of the case may require, as show-
ing the extreme liberality of our courts as to pleadings in
equity so far as mere forms are concerned.    See *Kyle* v.
*Kyle*, 1 Gratt. 526.

The circuit court therefore did not err in regarding
the petition filed by the executors of Elizabeth Stuart on
November 6, 1879, as a bill of revivor, if they had at
that time a right to file such bill and require the revi-
val of the cause.    And it seems to me that there can be no
question but that they had a right to have this cause revived.
As far back as September 1, 1863, there had been a reference
of this cause to settle the executorial accounts of the defend-
ants, and the female plaintiff having died the male plaintiff
had caused the suit, as he had a right to do, to be revived in
his name as her administrator, and the court directed it to
proceed in the name of the male plaintiff in his own right
and as administrator of his wife, and at the plaintiff's
instance had again ordered a settlement of the executorial
accounts of the defendants and also an ascertainment of the
debts of the estate as well as the sums due to the executors
of Elizabeth Stuart.    This account had been proceeded with,
and a number of depositions had been taken sufficient to show,
that a considerable balance was due from the plaintiff Wm. B.
Reid to the executors of Elizabeth Stuart, the defendants, be-
cause of their having paid some six years before, but since the
institution of this suit, the debt due McClung's estate on this
bond signed by both the plaintiff, Wm. B. Reid, and the
defendant's testator, Elizabeth Stuart.    This, in his original
bill the plaintiff expressly claimed, was the debt of Elizabeth
Stuart, and asked the court to order her executors to pay it.
They in their answer denied, that it was her debt, and insisted

it was the debt of Wm. B. Reid. Of course it was proper
and necessary in this cause for the court to determine, who
was the principal in this McClung debt; and if it turned
out, as it did, that it was the debt of the plaintiff, Wm. B.
Reid, as principal, and it that was paid by the executors of
Elizabeth Stuart, who was only his surety, the court would have
rendered a decree against Wm. B. Reid, the plaintiff, in favor
of the defendants for any balance, which might be due from
Reid after deducting what was due him on the settlement of
the executorial account proper.   To have refused to do so
and to have compelled another suit to be brought against
Reid to enforce the payment by him of the amount, that the
executors of Elizabeth Stuart had paid for him, would have
been in violation of the principle of a court of equity, that
when a matter has been necessarily and fully enquired into
by the court and by it determined, it will do full justice
between the parties by the rendition of a proper decree in
the cause and not turn either party over to another and unneces-
sary suit to enforce his ascertained rights.   And if while the
court was, as required by the pleadings in the original cause,
through its commissioner, investigating the question, who
was the principal in this McClung debt, Wm. B. Reid the
plaintiff died, his representatives would clearly have had
a right to revive the cause in his name, and the defendants
also would have had a right to revive the cause and insist
upon its proceeding in the name of Wm. B. Reid's adminis-
trator and heirs, for under these circumstances a reference
having been ordered involving the question necessarily, who
was the principal in the McClung debt, and much evidence
having been taken before the commissioner on this question,
Wm. B. Reid would have had no right to dismiss the cause,
thus perhaps escaping a decree against him ; and if he had
no right to dismiss the suit, while he lived, the defendants
would, as we have seen, have a right to revive it after his
death and insist that it should be further prosecuted in the
name of his administrator and heirs, as they were both
responsible on the facts stated in the petition for the revival
for any balance which might be found due from Wm. B.
Reid.   And this the court permitted them to do, treating, as
it properly did, this petition as a bill of revivor.

It remains to determine, whether the court erred in the
decree of June 17, 1880. We have seen that the com-
missioner in his report did not err in treating the Mc-
Clung debt as a debt due from William B. Reid as prin-
cipal and in regarding Elizabeth Stuart, as only the surety
in this debt. And we have seen, that when it was paid
by one of the executors of Elizabeth Stuart, it was prop-
erly chargeable in this cause to William B. Reid and after
his death to his representatives, but the commissioner
however erred in supposing that this claim against Wm. B.
Reid or his representatives was barred by the statute of limi-
tations, for if it was properly, as we have seen, audited in this
cause, it could not be barred, as the demand not only did not
arise more than five years before this suit was brought, but
really did not arise for years afterwards nor indeed for years
after a reference to settle accounts had been made to a
commissioner, from which time the defendants must be
regarded as seeking to settle this dispute by this suit. The
court however in its decree of June 17, 1880, while it adopted
the views of the commissioner, so far as he held this McClung
debt to be due from Wm. B. Reid as principal, and that hav-
ing been paid by one of the executors of Elizabeth Stuart,
William B. Reid or his representatives became responsible
therefor, yet it did not adopt this commissioner's view, that
this claim was barred by the statute of limitations, but prop-
erly held that it was to be accounted for in this cause by the
representatives of Wm. B Reid. It thereby properly in
effect departed from the views set forth by the counsel of
Wm. B. Reid's administrator and heir in his exceptions
when he says, " the debt of five hundred and eighteen dollars
and ninety-seven cents claimed to have been paid by the
executors to Charles McClung's administrator September 19,
1871, has no connection with this suit and has been improp-
erly reported by the commissioner," and from all that follows
this sentence in said exceptions in the same paragraph.
What is said about the " scoop net" in the next paragraph in
these exceptions is now without application, as the court
properly in its decree of June 17, 1880, disregarded what was
contained in this " scoop net."

We will now consider, whether the court in this decree

of January 17, 1880, properly disposed of the several matters contained in the first four exceptions to said report of the commissioners.

The first of these exceptions was, that "vouchers 5 and 8 in the executorial account are notes given by John Stuart after the death of the testatrix. The charges made on these vouchers are therefore improperly credited to the executors." This exception is based on an error as to the facts proven in the case. The dates of these notes are respectively June 9, 1859, and June 29, 1859; and Mrs. Elizabeth Stuart did not die till July, 1859. These notes on their face show, that they were given for debts of Mrs. Elizabeth Stuart contracted shortly before her death, and when paid by her executor they were properly credited to him. The court in its said decree in effect overruled this first exception and did not err in so doing.

The second exception is: "If Mrs. Stuart had divided her property and delivered it to her children in 1856, as the defendants prove was the case, voucher 10 should be paid by the children and not by her estate; therefore this item of two hundred and seventy-two dollars and twelve cents has been improperly credited to the executors." Much the largest part of this item as shown by voucher 10 was land-tax against Mrs. Elizabeth Stuart paid by one of her executors, John Stuart, after her death. These lands remained in the name of Mrs. Elizabeth Stuart during her life and were taxed to her and were disposed of by her will made January, 1858, and codicil made in 1859 shortly before her death. The division then of her property among her children in 1856 was not a complete or perfect gift of these lands, and she was properly chargeable with the taxes on them, and the executor properly credited with it as a payment of a debt of hers. And the same, so far as the evidence shows, may be said of the tax on negroes and the other taxes included in voucher 10. The court in effect by its decree of June 17, 1880, overruled this second exception, and in so doing did not err.

The third exception is, that "vouchers Nos. 19 and 22 are not proved to be debts of the testatrix. The executors who have improperly paid these debts, are not competent witnesses to prove them against the estate of Wm. B. Reid, deceased. The

debt shown by voucher 64 is improperly allowed for the same reason." These vouchers on their face do not show whose debts were referred to in them. They were paid as debts of the testatrix by the executors, as appears by the vouchers, and the burden was on the plaintiff to show, that they were not debts of the testatrix. He failed entirely to do so, and therefore it was not necessary for the executors to prove they were debts of the testatrix; but they were proper witnesses to prove that they were debts of the testatrix, though by so doing the estate of Wm. B. Reid might be injuriously affected. The court in effect by its decree overruled this third exception, so far as it referred to the debts named in vouchers 19 and 22 and in so doing did not err. So far as this exception refers to the debt shown by voucher No. 64, the court in effect sustained by its decree this exception, and the defendants do not complain of this action of the court, and it should therefore be approved.

The fourth exception is that " the debts represented by vouchers 49, 50, 51 and 58 are debts of John Stuart. They are certainly not claims against the estate of the testatrix, as they show on their face, that they relate to transactions with John and the other heirs of the estate." William R. Stuart proves that these various receipts, though on their face they show they were for money paid on land purchased by John Stuart of Alexander McClung, yet in fact this land was bought of Alexander McClung by John Stuart simply as the agent of his mother Elizabeth Stuart, and the deed for the land was made to her or to her heirs after her death, so that this purchase-money due on this land was in point of fact a debt of Elizabeth Stuart and was properly paid by her executors. The court in its decree of June 17, 1880, in effect overruled this fourth exception and in so doing did not err.

There are no other errors or supposed errors in this decree of June 17, 1880, which have been pointed out by counsel, or which I have been enabled to find. The entire decree is, so far as I can see, in accord with the principles I have stated in this opinion, and it must be affirmed as well as the order of November 6, 1879; and the appellees

must recover of the appellants their costs in this Court expended and thirty dollars damages; and this cause must be recommitted to the circuit court of Greenbier county to be there proceeded with according to the principles laid down in this opinion and further according to the principles governing courts of equity. .

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREE AFFIRMED.    CAUSE REMANDED.