# WHEELING.

## BILMYER v. SHERMAN et al.

Submitted September 6, 1883—Decided March 29, 1884.

1. It is the duty of the plaintiff in a creditors' bill to make parties thereto all the lien-creditors of the debtor known to him and those, whose liens are disclosed by the judgment-lien docket or the records of the courts of any of the counties, in which any of the lands sought to be sold are situated. (p. 661.)

2. Creditors who file their claims before a commissioner in such suit, although not formal parties to the bill, become informal parties to the suit and are as effectually bound by the decrees entered therein, as if they had been made parties to the bill and served with process. (p. 662.)

3. If all the lien-creditors are made parties to such suit either formally or informally, this Court will not reverse a decree ordering a sale of the lands of the debtor, merely because the record shows that some of the lien-creditors, who ought to have been, were not made formal parties to the bill, unless it appears that objection was made to the bill in the court below for the want of such formal parties. (p. 661.)

4. In such suit the formal plaintiff having obtained satisfaction of his debt, it is not error for the court to state that fact on the record and dismiss him from the suit and order the same to be thereafter prosecuted in the names and for the benefit of some or all of the unsatisfied creditors whose claims have been audited in the suit. (p. 662.)

5. Where there are liens by trust-deeds, the trustees in such deeds must be made formal parties, before any sale of the debtor's lands can be ordered ; such trustees cannot be made informal parties by publication ; and where a decree of sale is made in the absence of a trustee, this Court will reverse the decree, although the *cestui que trust* had his debt audited in the suit. (p. 664.)

6. A decree or order of reference to a commissioner in one creditors' suit operates a suspension of all other pending suits for the administration of the debtor's assets ; and such decree may be made in the cause first ready for hearing, although it may not be the suit first instituted.   (p. 664.)

The opinion of the Court contains a statement of the facts of the case.

*D. B. Lucas* and *Grove & Brown* for appellant.

*W. H. Travers* and *G. M. Beltzhoorer* for appellee.

SNYDER, JUDGE :

This is an appeal from two decrees of the circuit court of Jefferson county pronounced in a general creditors' suit brought by David Bilmyer in February, 1876, against Oliver Sherman to subject the real estate of the defendant to the payment of all the liens resting upon it.   The bill was filed by the plaintiff "on behalf of himself and all other lien-creditors of the defendant who may become parties and contribute to the payment of costs."   It avers that the real estate of the defendant is encumbered by judgment and trust-liens to an amount exceeding its value, but no one is named as a defendant except said Sherman, the lien-debtor.

At the same time a second suit was brought in the same court by Edward Tearney as administrator of Adam Sherman, deceased, against said Oliver Sherman as sole heir, and Philip Barnhart and others as creditors, of the said Adam, to have a settlement of the administration accounts upon the estate of said Adam, ascertain the amounts and priorities of the debts due therefrom and to sell the real estate of said decedent to pay the same.   It appears from these suits that the defendant Oliver Sherman was the owner of four tracts of land situate near Shepherdstown in Jefferson county. *First*, the "Aspen Pool" or "Home" tract containing three

hundred and seventeen and one half acres; *second*, the "Black Farm" of about one hundred and ninety-eight acres; *third*, the "Muck" or "Andrews" tract of about fifty-six acres, and *fourth*, the "Lecklider" tract, the whole estimated to be worth about thirty thousand dollars. The "Home tract" was inherited by the said Oliver from his father, the said Adam Sherman, and the other tracts he purchased.

These two causes were by separate orders, made in March 1876, referred to Commissioner Moore, with directions to him, in the first, to ascertain and report the liens on the real estate of the defendant, Oliver Sherman, with their respective priorities, first giving legal notice of the time and place of executing the order; and with directions to the commissioner, in the second, to settle the accounts of the plaintiff, as administrator of Adam Sherman, deceased, ascertain the estate real and personal of which he died possessed, the amounts and priorities of his debts and requiring him before taking his account to give notice by publication in some newspaper published in the county for four successive weeks as prescribed by chapter 200 of the Acts of 1872–3.

The commissioner made a report pursuant to said orders, which was excepted to and re-committed to him. Subsequently by orders made in the first suit only, the report of the commissioner was re-committed not less than six different times for the purpose of convening the lienors and having all the liens on the lands of the defendant, Oliver Sherman, audited and their priorities ascertained and reported; and each reference required the commissioner to give notice to the creditors by publication in some newspaper of the county for four consecutive weeks before executing the orders of reference. The commissioner after having given the required notice made and returned reports from time to time in response to said orders, some of which reports were confirmed in part before re-committal. From the last of these reports made March 14, 1878, it appeared that the liens on the defendant's lands aggregated the sum of thirty-four thousand four hundred and forty-five dollars and forty-eight cents, as of March 1, 1878, divided as to priorities into thirty-seven classes and due to over sixty different creditors. Some of these creditors filed answers setting up their claims and

others on their own petitions were made formal parties to the cause.

By a decree pronounced April 24, 1878, upon both causes heard together, the said last mentioned report was confirmed and all the lands of the defendant, Oliver Sherman, decreed to be sold by commissioners appointed for the purpose. The commissioners sold all of said lands, but the sales of the "Black" and the "Andrews" tracts were set aside. The sales of the "Aspen Pool" and the "Lecklider" tracts were confirmed by decrees entered October 25, 1878, and April 11, 1879.

It appears that the said "Andrews" tract was purchased by Oliver Sherman from Helen A. Andrews, who conveyed the same to him by deed of March 9, 1875, in consideration of two thousand seven hundred and sixty-eight dollars for the payment of which a lien is therein retained. By trust-deed dated March 4, 1875, five days before said conveyance to Sherman, the said Helen A. Andrews had conveyed said land to C. H. Knott, trustee, to secure to Samuel M. Knott the payment of a bond executed by her to him for four hundred and forty-seven dollars and twenty-five cents, dated February 12, 1873. On November 21, 1879, the court by its decree directed the commissioner to ascertain and report the date at which the unpaid purchase-money due to said Helen A. Andrews, then Mrs. Muck, became due and whether said Knott trust-debt was still a subsisting lien on the said land and the amount so subsisting. This decree concludes as follows: "And it appearing that the debt audited in favor of David Bilmyer, the plaintiff in this cause, has been paid and satisfied, it is ordered that he be dismissed from the cause and that the same be prosecuted for the use and at the costs of R. Domer, F. Mertons, Helen A. Muck and any other creditors of O. Sherman, who may audit their claims and participate in the proceeds of sale of lands in the bill and proceedings mentioned."

The commissioner reported that the balance still due and unpaid to said Helen A. Muck was two thousand five hundred and thirty-five dollars and eighty-five cents with interest thereon from March 9, 1875, and that the balance unpaid on the Knott trust-debt, as of March 1, 1880, was five hundred

and twenty-nine dollars and thirty cents. The counsel for Sherman excepted to this report; first, "because the commissioner reported the Knott lien as a subsisting lien on the 'Andrews' tract of land; and second, because the commissioner did not ascertain when the purchase-money secured by vendor's lien to Mrs. Muck is due and draws no conclusion from the testimony before him."

On April 10, 1880, the court being of opinion from the evidence submitted, that the purchase-money for the "Andrews" tract of land was then due and bore interest from March 9, 1875, overruled the defendant's exception to the commissioner's report and decreed a sale of the said "Andrews" and the "Black" tracts of land. From this and the said decree of November 21, 1879, the defendant, Oliver Sherman, was allowed an appeal and *supersedeas* by this Court.

The appellant assigns the following grounds of error:

1st. That the bill does not make the judgment-creditors, or the deed-of-trust-creditors, parties thereto; that no subpœna in chancery has ever been served upon them, and that no decree entered in this cause can bind them, as they are not parties to the suit.

2d. That David Bilmyer, the only complainant in the bill, has received his debt in full and been dismissed from the cause, and that there is no other party to the suit in whose name it could proceed.

3d. That under the circumstances surrounding the case it was error to appoint a special receiver of the rents and profits.

4th. That the court erred in decreeing that the purchase-money due from Sherman to Mrs. Muck was due and payable at that time, as will appear from the evidence filed with said report.

5th. That the amount of said debt should have been credited with the amount of the Knott trust, which was paid by Sherman under an agreement with Mrs. Muck.

6th. That the court erred in overruling the defendant's exceptions to said report, based upon the ground that commissioner did not ascertain when the said purchase-money was due, and drew no conclusion from the testimony before him.

7th. That the court erred in auditing the Knott trust as a subsisting lien, and decreeing a sale, when the undisputed testimony shows that there is a large unsettled account now in process of settlement between Sherman and Knott, involving the said trust, and that an injunction unanswered and undissolved restrains the enforcement of said lien.

*First*—It was plainly the duty of the plaintiff to make parties to his bill all the lien-creditors of the debtor known to him, and those whose liens were disclosed by the judgment-lien dockets or records of the courts of the counties in which any of the lands sought to be subjected to sale were situated—*Norris* v. *Bean,* 17 W. Va. 655. This was not done in this case, although the bill in general terms declared that there were numerous liens on the debtor's lands other than that of the plaintiff, and the record shows that not less than fifty of those lienors, who subsequently filed their claims and became informal parties to the suit, were such as should properly have been made formal parties to the bill. The violation of this elementary rule of equity practice has necessitated, as the record shows, repeated references to and reports by commissioners, and the recommittal time and again of the commissioners' reports, thereby unduly protracting the proceedings, greatly increasing the costs and causing much confusion and, perhaps, unavoidable injustice to some of the creditors. This cause will illustrate the evil effects flowing from, disregarding the settled rules of equity pleading, and fully vindicates the wisdom of those rules. I fully approve the remarks made by Judge Green in *Renick* v. *Ludington,* 20 W. Va. pp. 562, 563, in regard to the violation of equity rules in that cause, and without repeating them they are referred to as expressing my views of the bill and proceedings in this cause.

While it was thus plainly the duty of the plaintiff to make all such lien-creditors formal parties to his bill, still having called them into the suit by publication in a newspaper requiring them to present their liens before a commissioner, and they having filed their claims in the cause without objection to the bill, this Court will not reverse the decrees entered in the cause merely because the record discloses that all the lien-creditors who should have been, were

not made formal parties to the bill—*Neely* v. *Jones*, 16 W. Va. 626.

. This was in form a creditors' suit; and all the creditors who filed their claims before the commissioner, although not formal parties to the bill, become informal parties, and are as effectually bound by the decrees of the court entered in the suit, and the court has the same jurisdiction over them, as if they had been made formal parties to the bill and been duly served with process—*Arnold* v. *Casner*, 22 W. Va. 444; *Marling* v. *Robrecht*, 13 *Id.* 140. I am, therefore, of opinion that the first assignment of error is not well taken.

*Second*—For the reasons and upon the authorities just stated all the lien-creditors of the appellant, who filed their claims and had them reported by the commissioner, thereby became parties to the suit, and being such parties the court had the right and the authority, after the debt of the formal plaintiff had been paid and satisfied, to dismiss the suit as to him and direct that the cause should be thereafter prosecuted in the names and at the costs of any or all of the unsatisfied creditors who had filed their claims and thus become parties to the suit. If such were not the case the other creditors would be at the mercy of the nominal plaintiff and the uses of a creditors' suit would be greatly impaired if not entirely destroyed. After an order of reference the plaintiff in such bill ceases to have absolute control of it, and it cannot be dismissed by him without the consent of the other creditors. And the court may transpose any party to such suit from defendant to plaintiff and *vice versa*, if it is necessary to do so to effect the purposes of the suit and the ends of justice—*Reid* v. *Stuart*, 20 W. Va. 382; *Burlew* v. *Quarrier*, 16 *Id.* 109. The circuit court did not, therefore, err in dismissing the bill as to the nominal plaintiff, Bilmyer, and ordering the suit to be prosecuted in the names of R. Domer, F. Mertons and others who had audited claims in the cause— *Linsey* v. *McGannon*, 9 W. Va. 154. And so the appellant's second assignment of error must be overruled.

*Third*—The circumstances and facts disclosed by the record at the time the rents and profits were sequestered, by the court appointing a receiver to take charge of the same, fully justified the action of the court. It then appeared that the

appellant was insolvent and that his real estate was insufficient to pay the undisputed liens thereon—*Grantham* v. *Lucas*, 15 W. Va. 425. The third assignment of error must, therefore, be also overruled.

*Fourth*—I have carefully examined the evidence in regard to the date at which the purchase-money on the "Andrews" tract of land became due from the appellant to Mrs. Muck, and while the testimony of the parties is conflicting and uncertain, I do not think the court erred in fixing the time as it did by its decree of April 10, 1880. From the testimony it appears that no bonds were given for this purchase-money and it is not probable that, if Mrs. Muck had agreed to wait six years for the money, as deposed by the appellant, the matter would have been left open and no bonds given for it. The deed is dated March 9, 1875, and recites on its face that a lien is retained "to secure the deferred payments." Mrs. Muck testifies that five hundred dollars was to be paid cash and the balance in two payments at one and two years from the date of the sale. Certainly the evidence in favor of the pretension of the appellant is not so plain as to warrant this Court in overruling the conclusion deduced from it by the circuit court. The fourth assignment is, therefore, overruled.

*Fifth*—The fifth assignment is not well taken, because the testimony does not show that the appellant had entered into such an agreement to pay the Knott trust-debt as would relieve Mrs. Muck from her liability to Knott for said debt. The agreement made by appellant, if any was made, was with Mrs. Muck and not with Knott. Unless it had been shown that Knott had released Mrs. Muck and accepted the appellant for said debt, or that the appellant had in fact paid it off, he was not entitled to a credit for it as against the debt of Mrs. Muck; and the court did not err in refusing so to credit it.

*Sixth*—This assignment is sufficiently answered by what has just been said in reference to the fourth assignment. The court having decided that the purchase-money for the "Andrews" tract of land had become due at the date of the decree, a matter which it had the right to decide even if the commissioner had reported otherwise, the appellant is not

prejudiced and cannot complain that the commissioner failed to report on that matter.

*Seventh*—While all lien-creditors must be regarded as having become parties, either formally or informally by filing their claims before the commissioner in this cause, it does not follow that the trustees in unsatisfied trust-deeds can be made parties otherwise than by petition or by being formally made such by the bill. A decree directing the liens to be audited, even in a creditors' bill such as this, could not make any one but lien-creditors *quasi* parties. It could not make a trustee holding the legal title to the land a party. Only the classes of lienors on behalf of whom the bill is filed can be made such informal or *quasi* parties by publication. If the trustee is not formally made a party and brought into court there can be no proper decree for a sale of the land, the title to which is vested in such trustee—*McCoy* v. *Allen*, 16 W. Va. 724.

In this cause neither C. H. Knott, the trustee, nor Samuel M. Knott the *cestui que trust* in the trust-deed given March 4, 1874, by Mrs. Muck on the "Andrews" tract of land prior to her sale to the appellant are formal parties to the suit. But as the *cestui que trust* has appeared and filed his debt in the suit and had it audited and provided for in the decree he cannot at this late day nor can the appellant complain that he was not made a formal party. It is, however, very different as to the trustee, C. H. Knott. He holds the legal title to the land and until he is brought before the court it can acquire no control over or right to sell the land. It was, therefore, error to decree a sale of the said "Andrews" tract of land without having first had said trustee made a formal party to the cause and regularly brought before the court by summons or appearance.

It is also insisted that the court should not have ordered a sale of said tract of land until the controversy between the appellant and S. M. Knott, the beneficiary in the said trust-deed, had been settled in an alleged injunction suit pending between them. This being a creditors' suit, that cause if seriously relied on should have been heard with this and all matters relating to said debt litigated and determined in this suit. A decree in one creditors' suit operates a suspension

of all other pending suits for the administration of the assets of the debtor, and this decree may be made in the cause first ready for hearing although it may not be the suit first instituted—1 Barton's Ch. Pr. § 91, p. 276.

S. M. Knott as a lien-creditor was compelled to present his lien before the commissioner in this cause or incur the risk of having the assets of his debtor administered without any participation in them. He did file his debt before the commissioner, and its validity was there contested by the appellant. Sundry depositions were taken including those of the appellant and Knott, the creditor. In this contest the circuit court decided, and, I think properly, that the appellant failed to establish the payment of this debt. But even if this fact were doubtful, still there is no pretense that the trust-deed had been released, and Mrs. Muck being the debtor of Knott on the record, she could not be required to await the termination of a suit between the appellant and Knott in which she had no interest, before enforcing her vendor's lien on the land of the appellant. As we have stated before, under the fifth assignment, no agreement has been shown between Knott and the appellant which would relieve Mrs. Muck from liability to Knott for this debt, and she being thus liable was not bound to credit her debt with said trust-debt. Knott could sue her at law and the pretended or real off-sets of the appellant against Knott would not avail her. I am, therefore, of opinion that the circuit court did not err in auditing this trust-debt as a subsisting lien.

The record is so confused and defective in many respects, that it is almost impossible to ascertain what it contains and what it does not contain. It appears, however, from a memorandum in the report of Commissioner Moore, dated March 14, 1878, that James M. Mason is trustee in a deed of trust executed by Oliver Sherman, recorded September, 1875, on one hundred and fifty-six and fifty-one acres of land to secure debts to Raleigh Domer and L. W. Puffenberger. If this deed is on either of the tracts of land directed to be sold by the decree of April 10, 1880, one of the decrees appealed from to this Court, that is, either the "Black" or the "Andrews" tract of land, then said Mason should be made a formal party and brought before the court before a sale of

said lands is ordered. And if such trust-deed is in fact on either or both of said tracts, then, according to the principles hereinbefore announced, the said decree of April 10, 1880, is erroneous, because made in the absence of said trustee and when the legal title was not before the court.

The counsel for F. Mertens, one of the lien-creditors, whose debt is audited in this cause, claims that there is error to the prejudice of said Mertens in the said decree of November 21, 1879, in so far as it overrules his exception to the report of the commissioner. The said Mertens by decree of May 2, 1879, which has not been appealed from, was as to certain judgments claimed by him placed in class three among the creditors of the appellant by the confirmation of the report of the commissioner. By a subsequent decree of November 21, 1879, the trust-debt of R. Domer was given priority over the said judgments claimed by Mertens. The said judgments were recovered and docketed on the judgment-lien docket prior to the date of the Domer trust-deed, but after the date of said trust-deed forthcoming bonds given on said judgments were forfeited and executions awarded upon them. If then the said Mertens is entitled to date the lien of his judgments to the time the original judgments were rendered on his debts, his liens should have priority over the Domer trust-deed which was of a subsequent date. That Mertens was so entitled there can be no question. While the statute declares that the return of a forthcoming bond creates a new lien, it was never intended that this lien made for the benefit of the creditor should work to his disadvantage or that it should destroy the lien of his original judgment unless satisfied by the payment of the debt—Barton's Law Pr. 336–7. It follows, therefore, that the said decree of November 21, 1879, in so far as it overrules the exception of F. Mertens to the report of Commissioner Moore filed October 18, 1879, is erroneous.

For the foregoing reasons so much of the decree of the circuit court of Jefferson county entered November 21, 1879, as overrules the exception of F. Mertens to the report of Commissioner Moore, filed October 18, 1879, is reversed; and so much of the decree of said court, entered April 10, 1880, as directs the sale of the "Andrews" tract of land be-

fore the proper parties were brought before the court, is also reversed with costs to the appellant against the appellees, and in all other respects said decrees are affirmed; and this cause is remanded to the said circuit court for further proceedings there to be had according to the principles announced in this opinion.

REVERSED IN PART.   REMANDED.