# WHEELING.

## BENSON *v.* SNYDER *et al.*

Submitted January 9, 1896—Decided June 6, 1896.

LIENS—CONVENTION OF LIENHOLDERS—PURCHASE-MONEY LIENS.

A convention of lienholders under section 7, chapter 139, Code 1891, on publication of notice to present their liens against the land of a party, will not bar the purchase-money lien of a vendor of such land, who retains the legal title, not an actual party to the suit. Nor is a lien reserved in a deed passing title barred by such convention, unless its owner be an actual party.

CHARLES E. HOGG for appellant, Cited Code, c. 239, s. 7; 14 W. Va. 388; 12 W. Va. 98; 3 W. Va. 428; 22 W. Va. 159, 160; 13 Pa. St. 102, 103; 2 How. 338; 59 Pa. St. 290, 294; 52 Pa. St. 285; 57 Pa. St. 394, 395; 24 La. Ann. 482; 2 La. Ann. 503, 923, 895, 966; 19 La. Ann. 353; 11 Ohio St. 486, 13 Pa. St. 98; 11 S. & R. 430; 1 Otto, 638; 2 Wall. 210, 216; 18 How. 497, 502; 3 Ohio St. 494; 25 Miss. 232; 26 Miss. 332; 30 W. Va. 687; 78 Ga. 54; 2 Herm. Est. & Res. Jud. §§ 958, 968; 17 W. Va. 276, 313.

WM. A. PARSONS and J. W. BENSON, for appellees, cited Code, c 139, s. 7; 23 W. Va. 656, 664; 33 W. Va. 653; 35 W. Va. 705; 14 W. Va. 264, 809, 821; 6 W. Va. 168, 177, 178; 10 W. Va. 35, 41, 42; 11 W. Va. 386, 397; 17 W. Va. 901; 21 W. Va. 234, 247; 10 W. Va. 321; 30 Ark. 407; 19 Fla. 356; 70 Me. 57; 55 Miss. 232; 54 Barb. 455; 16 Pa. St. 357; 51 Wis. 232; 47 Am. Rep. 394; 82 N. Y. 29; 48 N.

Y. 326; 9 Law. Rep. 111; 73 Ala. 263; 12 Am. & Eng. Enc. Law, 224, n. 1; 22 W. Va. 165, 160.

BRANNON, JUDGE:

Benson filed a bill in the Circuit Court of Jackson county against Snyder and Casto to enforce a lien for purchase money of land which Benson alleged he had sold Snyder by executory contract providing for conveyance of the legal title on payment of purchase money. Casto answered that he had purchased the land at a sale under a decree in another case brought to enforce judgment liens against Snyder's land, in which there had been a convention of lienholders against Snyder's land, upon notice to them as provided by section 7, chapter 139, Code 1891, and contended that, as Benson had not presented his demand before the commissioner, he was barred from claiming it by another suit, by force of that section. The answer also alleged that Benson had no debt against the land for its purchase money, as Snyder had purchased the land from Benson, and fully paid him for it, in money, stock, and an interest in other lands owned by Snyder. The answer further alleged that Snyder had frequently declared that he was the full owner of the land, with knowledge on Benson's part of such declarations, and without denial by him, whereby Casto had been induced to believe that Snyder was such owner, and to purchase at the judicial sale in confidence that Snyder was such owner, and also that Benson was present at the sale, and made no objection to it, kept silent, and permitted Casto to buy in ignorance of any claim by Benson upon the land, and that by reason of these facts Benson was estopped from asserting his demand against the land. The decree subjected the land to Benson's demand, and Casto appeals.

It is true that if an ordinary lienholder fails to present his lien in obedience to the notice to lienholders under section 7, chapter 139, Code, he is barred of his lien; but we do not think that principle bars a vendor of land, yet holding the legal title, who is not an actual party to the suit. He holds the title, and to affect him he must be a party. He has the legal title, and without him that title

is not sold. The land is not sold because the full title is not at all operated on by the decree. He may keep his title till he gets his money. Such a person is not a mere lienholder. He holds something more and higher than a lien—the title. The statute only proposes to bar a lien, and does not take away title, by making a man a merely *quasi* party by publication. The statute is an innovation upon that rule of safety which says that a man shall not be affected by a judicial proceeding to which he is a stranger, and we ought not to extend it beyond its letter to prejudice one who holds, not simply a lien, but the title. He does not belong to the class of "undefined lienors," as Judge Green calls them in *McCoy* v. *Allen*, 16 W. Va. 724, but holds a specific lien. At most, it could only be said that such a decree would take away from such a vendor nothing more than the lien, not the title. Why take from him part, and leave the more material balance? This is strong to show that we ought not to apply the statute in such a case. Could a purchaser under such a decree sue the vendor, and compel him to pass to him the legal title? I think not; and, if this is so, it is strong to show the inefficiency of such a proceeding to impair in any way the rights of the vendor. See *Bensimer* v. *Fell*, 35 W. Va. 15, (12 S. E. 1078); *Turk* v. *Skiles*, 38 W. Va. 404 (18 S. E. 561); *Billmyer* v. *Sherman*, 23 W. Va. 656. These cases show that the trustee holding title is an indispensable party, as also the creditor; and it logically follows, likewise, that such vendor is an indispensable party, and can not be bound otherwise.

It is not necessary for the decision of this case to express an opinion as to whether a lien reserved in a deed passing title would be barred by failure of its owner to present his lien before the commissioner, he not being a formal party; but the matter is germane to the case. Though the question is somewhat nice, I think that such a lienor must be made a formal party in order to affect him. It is true that the language, "by judgment or otherwise," is broad, and that the purpose of section 7, chapter 139, Code, is to convene liens, give all lienors their rights, and sell to the purchaser a clear title, and protect

him against liens which may assail him after his purchase; and this policy of the statute might seem to apply to a vendor who has conveyed the legal title, retaining a lien, as he has but a lien. But there are other considerations leading to the other result. Such a lienor is one whose claim is apparent on the face of the very title of the debtor whose land you propose to sell. He has a specific lien, created by the debtor's title deed, and is not a general lienor, like a judgment lienor; and, under equity principles, a trust exists between vendor and vendee, by which the vendee holds title in trust for the vendor, as to the purchase money. Now, it is settled equity practice which requires all liens and incumbrances prior to that sought to be enforced to be brought before the court by making their owners parties—particularly, specific liens on the particular land to be sold. No practice tolerates the idea of selling land to pay a judgment or other incumbrance without bringing in prior mortgages, legal or equitable, judgments, and deeds of trust. Such a vendor's lien, retained in a deed, is treated as a mortgage. *Hull's Adm'r* v. *Hull's Heirs*, 35 W. Va. 155, 165 (13 S. E. 49); *Coles* v. *Withers*, 33 Gratt. 186, 194. And surely prior mortgagors should be parties. *Clark* v. *Long*, 4 Rand. (Va.) 451. Does the act change all this? It does not, in words, say so, and, to allow it to do so by implication or mere construction, the implication or construction ought to be very plain; for it would have the effect to reverse the safe equity rule of practice that all persons having an interest must be parties, to affect that interest, and no one can be held to lose his right without a chance for hearing after process served; and it would have the effect to cause the vendor who carefully reserved his right in his deed, and felt safe, to lose his debt for failure to present it, simply because of a published notice to lienors, of which, in distant lands, he never knew. Shall we, by simple construction, so far incroach on the old rule? Former equity practice did not require incumbrancers subsequent to the incumbrance sought to be enforced to be made parties. *Linn* v. *Patton*, 10 W. Va. 187. But our cases before and since the statute named required owners of all judgment and other liens to be

brought in, up to the date of the institution of the suit, apparent on the judgment lien docket or records of the courts of the county or counties in which the land lies, or apparent in deeds of trust, or other deeds or papers constituting specific liens on record, or existing, recorded or not. *Hoffman* v. *Shields*, 4 W. Va. 490; *Neely* v. *Jones*, 16 W. Va. 625; *Norris* v. *Bean*, 17 W. Va. 655; *Marling* v. *Robrecht*, 13 W. Va. 440; *Billmyer* v. *Sherman*, 23 W. Va. 656; *Bensimer* v. *Fell*, 39 W. Va. 448 (19 S. E. 545); *McMillan* v. *Hickman*, 35 W. Va. 705 (14 S. E. 227); *Bank* v. *Watson*, 39 W. Va. 342 (19 S. E. 413); *Livesay* v. *Feamster*, 21 W. Va. 83. And section 7, chapter 139, Code 1891, requires the observance of this rule in suits to enforce judgments, and is said in the opinion in *Livesay* v. *Feamster, supra*, simply to enforce the antecedent rule as to the necessity of making lienors parties. I think all specific lienors, such as vendors holding liens by executory contract, or by reservation in a deed, attachment liens, liens by mortgage, legal or equitable, or legacies charged by will, must be made formal parties; and, if not made such parties, they are not bound by a convention of lienors by publication of notice to lienholders under section 7, chapter 139, of the Code. Indeed, judgment creditors also must be made parties, by the decisions above cited, and by the letter of said section; but, as to them, such convention would bind them. All lienors must be parties, but the question I am more particularly discussing is, what is the effect of such convention and publication as to those not formal parties? And I repeat that as to mere general lienors, like judgment creditors, they are barred if they do not present their claims, but such specific lienors are not. Of course, any lienors may present their claims, and if they do, they become *quasi* parties, and are bound by the decree. *Billmyer* v. *Sherman*, 23 W. Va. 656. All the members of the Court hold that a lien reserved in a deed is not barred by such a convention, unless its owner be a formal party.

As to the estoppel by conduct of Benson: It is alleged by Casto, and must be proven by him. Counsel for Casto says that as it is alleged in the answer, and is not denied in the special reply, it is taken for true. This is new matter,

but not such as calls for affirmative relief, and calls for no reply, and is met by the general replication. *Foutty* v. *Poar*, 35 W. Va. 70 (12 S. E. 1096) and cases. I hardly think it proven so as to enable us to say that the decree is wrong for this cause, especially as Casto knew of Benson's claim on day of sale, before its consumation, and could have been relieved of his obligation under sale by objecting to its confirmation, and informing the court that Benson held legal title and claimed a lien, and the court would have made him a party.

Lastly, has Benson a lien? The evidence is satisfactory and clear that he has not. He exhibits a contract between Snyder and himself, and Snyder's notes, dated March 1, 1886, to show the sale; but they are proven, I may say, by only Snyder, Benson, and Benson's wife. Snyder is Benson's nephew. The clear, disinterested testimony shows that Snyder purchased and paid for a tract of forty-eight acres, and exchanged it with Benson for this fifty-six and one-half acres, in full payment for it. Sypher who, as agent for Hoyt, sold the forty-eight acres to Snyder, is direct and emphatic that Snyder himself bought and paid for it, saying at the time he intended to trade it to Benson for another tract. Sypher's wife heard the conversation, and corroborates Sypher. Numerous witnesses say that both Benson and Snyder so declared. A witness swears that he had an interest in asking Benson why he did not convey the fifty-six and one-half acres to Snyder, and he answered he was waiting to see how the Dyer suit would come out. That was the suit of Dyer against Snyder to subject the fifty-six and one-half acres to Snyder's debts, under which it was sold, purchased by Dyer, and the sale turned over and reported to Casto. Who wrote the pretended contract of its sale by Benson to Snyder? Snyder did. Who ever heard of it till it was sold from Snyder, and Benson brought suit to enforce it in October, 1891? No one. It seems then to have sprung into life. How comes it that Benson, a poor man, let two one hundred dollar notes for purchase money, payable March 1, 1887 and 1888, lie so long, without a cent paid on the land after March 1, 1886? How comes it that he did not list the notes for taxation, as he admits? And then there

are so many disinterested witnesses who say that Benson said he had traded the sixty-five and one-half acres to Snyder for the forty-eight acres, and was bragging on his good bargain.   And he knew of the suit to sell Snyder's land for his debts, and a notice to present liens was published right in his neighborhood, and he made no claim.   These circumstances, and the relation of the parties, constrain us to say that the debt claimed by Benson is fictitious.

We reverse the decree, and adjudge that Benson is not entitled to subject the sixty-five and one-half acres to the demand set up in his bill, and deny him the relief he asks; and we remand the case to the circuit court with directions to enter a decree to that effect, and requiring Benson to convey said sixty-five and one-half acres, with general warranty, to Casto, and appoint a special commissioner to do so, by proper deed, in case Benson shall fail, by a time to be fixed, to do so.

---

# WHEELING.

