# CHARLESTON.

## BENSIMER v. FELL.

Submitted January 21, 1891.—Decided March 7, 1891.

1. JUDGMENT-LIEN—VENDOR AND VENDEE—USURY.

A purchaser of land which is subject to the lien of a judgment takes it subject only to the amount called for by the judgment, and it is not liable to the judgment increased by usury under a subsequent agreement between the creditor and judgment-debtor.

## 16                                    BENSIMER *v.* FELL.

2. JUDGMENT-LIEN—USURY.

In a creditors' suit afterwards brought by another creditor to convene and enforce liens against lands of said judgment-debtor, but not against the land so sold, there is a personal decree against the debtor based on such judgment for an amount beyond the legal call of the judgment by reason of such usury, and the lands of such debtor are decreed to sale to pay that and other liens ascertained by a commissioner's report of liens under an order to convene them, and after publication of notice to creditors, and such purchaser's administrators and heirs are not formal parties but prove a debt before the commissioner, and afterwards an amended bill is filed to subject the land which had been sold to such purchaser to said debt:—*Held*, that the administrators and heirs of such purchaser are not precluded by such convention of creditors and such decree from disputing the amount of the debt as fixed by such decree, and the land so sold is to be held liable only for the amount legally called for by the judgment.

3. JUDGMENT-LIEN—PARTIES.

No subsequent decree or judgment for an amount beyond the legal call of the first judgment in a suit, to which such purchaser is not a formal party, or wherein the true amount due by reason of the judgment was not in fact litigated, can estop such purchaser from satisfying the demand by a payment of a sum lawfully called for by the judgment as it was when he purchased.

4. JUDGMENT-LIEN—PRIVITY.

A privy in estate is not bound by a judgment or decree recovered against him from whom he derived his estate, after he derived it, merely because of such privity.

5. JUDGMENT.

A judgment for a debt in favor of A. against B. is conclusive, not only between the parties, but even as to strangers, to establish the existence and amount of the liability, and strangers can only impeach it for fraud or collusion.

6. JUDGMENT-LIEN—PARTIES.

A decree under section 7, c. 139, Code 1887, upon a report of a commissioner after notice to lienholders, adjudging liens on the land of a debtor, is conclusive as between the various lienors proving liens, though not formal parties, as to the existence and amounts of their debts for the purposes of that cause as to the lands of the debtor; and if there be a personal decree against the debtor for such liens, not merely because of the statute, but on general principles of law, the decree would be conclusive generally as between, not only the creditor and debtor, but also as between the various lienors, as to the existence and amounts of their respective debts.

7. JUDGMENT-LIEN—DEED OF TRUST—PARTIES—BAR.

Any lienor holding a debt against the judgment-debtor consti-

tuting a lien on his land, not proving his lien in such proceeding, would be thereby barred from sharing in the proceeds of the sale of land under the decree, except in the surplus remaining after payment of the liens decreed, though not a formal party. But a debt secured by deed of trust would not be so barred, unless the trustee and *cestui que trust* be formal parties. They must still in such suit be made formal parties, under section 7, c. 139, Code, 1887.

8. JUDGMENT-LIEN—BAR.

While the debt of a party who ought to, but does not, prove his lien in such proceeding, is barred, as above stated, from participation in the proceeds of the sale, as a lien, yet the debt is not, as a personal debt against the debtor, barred merely from such failure.

9. JUDGMENT-LIEN—PARTIES—BAR.

Nor is a lien on the land of the judgment-debtor, created not by him but by a former owner of the land, barred as to such land by failure of the owner to prove his lien therein, but, to bar him for failure to do so, he must be made a formal party. This is the case even though the holder of such lien proved in the case another lien on the land created by the judgment-debtor himself.

10. DEED OF TRUST—MORTGAGE—PARTIES.

A deed conveys land to a trustee to hold for the separate use of a married woman, "expressly reserving, however, to the said E. A. C. (the woman) the right to sell and unite with her husband and her said trustee in conveying all or any part of said lands, whenever she may elect to do so." She and her husband make a deed of trust on the land, acknowledged by them properly, to which the trustee is not a party; but, by an underwriting under his hand and seal of same date with the trust, he agrees "that the above trust-deed may be executed, and, in the event that a sale of the above-named lands shall have to be made, I will unite in the deed conveying, provided the said sale is made according to the terms of this trust-deed." The instrument is recorded. *Held*, that though informal for the want of the trustee as a formal party, and not passing legal title, yet it creates a lien on the land as an equitable mortgage.

11. DEED OF TRUST—CERTIFICATE OF ACKNOWLEDGMENT.

The certificate of the privy examination and acknowledgment of such deed of trust has the caption, "State of West Virginia, Greenbrier county, to wit," and certifies the officer to be "a justice of the peace in and for the county aforesaid," but does not show that the woman appeared before him in the county. This will not avoid the certificate.

12. DEED OF TRUST—CERTIFICATE OF ACKNOWLEDGMENT.

Such certificate certifies that the woman "came before me, and having been examined by me privily and apart from her

husband, and having had the deed aforesaid fully explained to her, she, the said E. A. C., acknowledged the same to be her act and deed, and declared that she had willingly signed the same, and that she wished not to retract it." The word "signed" is equivalent here to "executed," and its use in place of the word "executed" does not vitiate the certificate.

*J. W. Harris* for appellants cited 2 Gratt. 199; 9 Gratt. 359; 12 W. Va. 143; 28 W. Va. 388; 23 W. Va. 594; 11 S. E. Rep. 1007; 4 W. Va. 443; 7 W. Va. 437; 25 W. Va. 590; 11 S. E. Rep. 932; 21 W. Va. 523; 16 W. Va. 732; 23 W. Va. 556; 17 W. Va. 655; 16 W. Va. 625; 16 W. Va. 732; Code, c. 139, s. 7; 33 W. Va. 644.

*A. F. Matthews* for appellee cited 21 W. Va. 108; 31 W. Va. 410; 2 Pom. Eq. § 937; 10 Wheat. 367; 5 Leigh 65; Id. 487, 491, 502, 510; 12. W. Va. 587 p'ts 1 and 2, syll. and pp. 607–609; 4 W. Va. 249, p't 2 syll.; 8 Leigh 20, p't 2 Syll.; 3 Rand. 373; 12 Leigh 462; 2 Min. Inst 839; 3 W. Va. 163; 7 W. Va. 569; 21 W. Va. 568; 26 W. Va. 829; 29 W. Va. 604; 26 W. Va. 807; 28 W. Va. 744; Code, c. 73, s. 6; 2 Min. Inst. 847 *et seq.;* 83 Va. 589; 32 W. Va. 134, p'ts 3 and 4 Syll.; Code, c. 139, s. 7; 31 W. Va. 410, p't 6 Syll. and p. 422; 20 W. Va. 140; 21 W. Va. 108; 28 W. Va. 323; 22 W. Va. 297; 13 W. Va. 573, p't 7 Syll.; 19 W. Va. 366; Code, c. 73, s. 4; 32 W. Va. 139; 22 W. Va. 292; *Id.* 297; 19 W. Va. 336, p't 4 Syll.; 12 W. Va. 70, p't 1, Syll.; 22 W. Va. 444, p't 3, Syll.; 17 W. Va. 656; 16 W. Va. 625.

BRANNON, JUDGE:

In 1890, W. G. Bensimer filed his bill in the Circuit Court of Greenbrier county against John P. Fell, to assert the lien of a judgment in favor of Bensimer against Fell, to convene the lienholders, and sell Fell's lands for the payment of the liens. The suit was in behalf of Bensimer and all other holders of liens, and, a reference having been made to a commissioner in chancery, he reported various liens against Fell's lands, and they were sold. One of the liens reported was based on a judgment of date 10th January, 1878, in favor of J. Whitehill against Fell, for eight hundred and forty three dollars, owned by Alex-

ander F. Mathews, and reported in his favor. Mathews claimed that he had entered into an agreement with Fell by which Fell agreed to pay an additional sum in consideration of the forbearance of Mathews to enforce said debt, and that according to that agreement this debt would amount to two thousand two hundred and forty six dollars and sixty five cents on November 10th, 1886; but the commissioner stated that, though there was no plea of usury by Fell, he thought he must be governed by the judgment, and calculate interest at the lawful rate, and so he reported the debt as of that date at one thousand two hundred and ninety four dollars and fourteen cents. Mathews excepted to the report for that cause, and the court sustained his exception, and decreed the debt against Fell at two thousand two hundred and forty six dollars and sixty five cents. The lands sold did not pay off all the debts decreed, and the Mathews debt was in large part unpaid, and an amended bill was then filed to bring into the cause and sell, for such of the unpaid debts as were liens thereon, lands which had been sold by Fell, namely, an undivided half of a tract of one hundred and eleven acres conveyed to the Crookshanks by Fell, and an undivded half of a tract of seven hundred acres called the "Sinking Creek Tract," conveyed by Fell to A. S. Skaggs. Skaggs being dead, his heirs were made formal parties by this amended bill. The cause was again referred to a commissioner to report the debts of Fell, constituting liens on any lands formerly owned and aliened by Fell, and all lands formerly owned by him on which said debts were liens. The commissioner under this second reference reported the said Mathews debt as a lien on the land conveyed by Fell to Skaggs, computing it on the basis of the amount of the judgment of eight hundred and forty three dollars, computing interest on it at six per cent. from the date from which it ran under the letter of the judgment, crediting two hundred and sixty six dollars and forty cents as realized on it from the land sold under the first decree. He made a special statement of this debt, stating its principal as two thousand two hundred and forty six dollars and sixty five cents, as fixed by the decree which

had been entered in the cause. Mathews excepted to it. IIis exception claims that the commissioner erred as to interest, and that he should have adopted as the principal of said debt the sum decreed by the above-mentioned decree, two thousand two hundred and forty six dollars and sixty five cents, and given interest from its date, instead of adopting the amount of the original judgment for a principal. The court adopted the theory of this exception, and carried it into decree by subjecting the land conveyed by Fell to Skaggs to the payment of two thousand and ninety one dollars and nine cents, the sum due Mathews on that basis. The administrators of Skaggs appeal from this decree.

The appellants say that the amount decreed for the Mathews debt is too large. On the date of the conveyance from the judgment-debtor Fell to A. S. Skaggs there had been rendered and docketed the judgment on which this Mathews debt is based, and of the amount of that judgment, withlawful interest as called for by it, Skaggs had notice ; and the mere agreement made between Fell and Mathews, by which Fell agreed that, in consideration of forbearance, there was due on the judgment on November 20, 1886, two thousand, two hundred and forty six dollars and sixty five cents, a sum largely in excess of the amount called for by the judgment, whatever might be its effect as between Mathews and Fell, could not operate as against the purchaser, Skaggs, to increase the debt over the amount which the judgment as docketed would demand. Of the large excess over the call of the judgment the purchaser had no notice. It surely would not be a part of the judgment as to him. In *Barbour* v. *Tompkins*, 31 W. Va. 410 (7 S. E. Rep. 1) it is held that where a bond calls for payment of interest annually, and is secured by deed of trust, and interest notes are given for the interest after it accrued, which bear interest, as between the parties the trust will secure the interest on the new interest notes, but that such interest can not avail as against subsequent creditors and purchasers. The same principle applies here. This is so whether the excess beyond the legal call of the judgment is based on usury or other consideration. It is a question of want of notice to

the purchaser as to such excess at the date of his purchase.

But the appellee Mathews contends that as in the first decree (that of November 20, 1886) his debt was ascertained to be, by reason of such agreement, two thousand two hundred and forty six dollars and sixty five cents, that fixes that amount conclusively as the measure of his demand, not only as against Fell, but as against the land conveyed to Skaggs. The administrators and heirs of Skaggs were not formal parties when that decree was pronounced, and the decree is on common-law principles, a nullity as to them. There was, however, an order of reference directing the convention of all the lienholders; and notice was published to lienholders under section 7, c. 139, Code, 1887; and a convention of lienholders was had; a report of liens was made by the commissioner; and the court acted upon the report, decreed the liens and fixed their amounts and priorities as to the lands still owned by the judgment-debtor Fell, then the only land involved in the suit, and directed their sale; and besides made a personal decree against Fell in favor of Mathews for an amount based on such agreement between them; and, moreover, these administrators of Skaggs had a certain debt reported among the liens against Fell's land.

What, in these circumstances, is the effect of that decree fixing the Matthews debt at a certain amount? Is it a finality and a bar against the administrators of Skaggs, preventing them from asserting that it was not the true amount of that debt except only for the purposes of the cause as it then stood—that is, as between the various creditors of Fell as regards the only land then in the cause, that is, Fell's land —or does it go further in its operation, and act against both the administrators and heirs of Skaggs, and estop them from contesting the amount of the Mathews debt when sought to be enforced against land not belonging to Fell, but which he had conveyed away? Before chapter 126, Acts, 1882, amending and re-enacting chapter 139 of the Code, it was common to direct the convention of lien-creditors of a debtor by publication in a suit to subject his land to a judgment, whether brought by one judgment-creditor only, or by one for himself and others; and any

creditor filing his claim before a commissioner became an
informal party, and bound as effectually by the decrees in
the cause as if he had been made a formal party.    *Arnold*
v. *Casper,* 22 W. Va. 444 ; *Bilmyer* v. *Sherman,* 23 W. Va.
662.    But a creditor not appearing could not be so bound.

No doubt the amounts of the debts of the various lienors
against their common debtor, as fixed by a decree in case
of such a convention of creditors, would be final for all
purposes, as between the debtor and such creditors, and
conclusive as between the creditors, for the purpose of that
cause, as to the land of the debtor sought to be sold ; and
it would, as between the creditors, not because of the
statute, but on general principles of law, being conclusive
as between the debtor and his creditors, be conclusive as to
the existence and amounts of the various debts decreed
against the debtor by decree binding him, as a personal
decree, in other litigation between such creditors, or touch-
ing other property than that decreed to sale in the cause
in which such decree was made.    I take it that the act of
1882, making section 7, c. 139, as it appears in the edition
of 1887 of our Code, does not change the law as regards
this point; that is, it does not give the decree any more
force than it had before, as between parties proving debts
either as between them and their debtor, or as between
themselves.    It does require that before a sale for a judg-
ment there must be a reference and notice to lienholders,
and it does prescribe the particular notice, and it does give
the decree a force as to the creditors not presenting debts
which it did not possess before the act of 1882, by barring
them from afterwards asserting liens on the land, and thus
more effectually protects purchasers under the decree ; but
it does not otherwise impart any additional effect to the
decree.    But there is a reason why in this case the admin-
istrators of Skaggs are not precluded by that decree from
showing that the amount of the Mathews debt as fixed by
it is too large, and it is this : that the ground on which
that debt reached the amount given by the decree is
that it was for the forbearance of money, that is, usury,
and that such defence is personal to the debtor, and can
not be made by any other creditor, if the debtor be living,

and even the subpurchaser of land bound by a previous usurious lien against a former owner can not defend his land on the score of usury in such previous lien. *Spengler* v. *Snapp*, 5 Leigh, 478; *Crenshaw* v. *Clark*, 5 Leigh, 56; *Lee* v. *Feamster*, 21 W. Va. 108; *Barbour* v. *Tompkins*, 31 W. Va. 410 (7 S. E. Rep. 1).

Therefore, if the administrators and heirs of Skaggs had attempted to plead usury against this debt before the commissioner on the first reference or in court before the amended bill bringing in the Skaggs land, their plea would have been unavailing; and it is well settled that before a judgment, as such, can be an estoppel, the party must have had right to make defence. 1 Greenl. Ev. § 535; Bigelow, Estop. 98; Herman, Estop. § 135; *Munford* v. *Overseers*, 2 Rand. (Va.) 318. So I conclude that said decree does not, *proprio vigore*, shut out the representative of Skaggs from showing that the decree does not fix the proper amount legally due for the Mathews debt in defence of their land, simply because the administrators were *quasi* parties, or because of any peculiar force of the suit as a creditors' suit, under chapter 139 of the Code; and I will add that it certainly can not be conclusive against Skaggs's heirs— *First*, because they were in no sense parties; and, *second*, because, even if conclusive as to his administrators, that would not make it binding on the heirs, as there is no privity between them. *McKay* v. *McKay's Adm'rs*, 33 W. Va. 724, (11 S. E. Rep. 213); *Saddler* v. *Kennedy*, 26 W. Va. 636. Here it is the land of the heirs which is to be affected by the decree.

But outside of the peculiar character of the suit as a creditors' suit, and of the fact of the appearance of the administrators therein to prove a debt, there is the personal decree for the Mathews debt against his debtor, Fell. Treat it as recovered in any form of proceeding to which the administrators were in no sense parties, and the question has occurred to my mind whether, as the decree is conclusive on Fell, the Skaggs heirs, claiming land bound by the judgment under a purchase from the judgment-debtor, must accept the amount of the debt as decreed as a finality. Can a person claiming land under a judgment-debtor who

is sued to hold the conveyance voluntary or fraudulent in fact, dispute the amount of the debt? There seems to be a great difference of opinion and decision on this question. Those who hold against the conclusiveness of the judgment argue that, as the grantee was no party to the suit in which the judgment was rendered, it ought not to bind him conclusively, but only *prima facie*, if at all, as to the fact of indebtedness and its amount, because it is a rule that strangers are not bound by a judgment; while others argue that, being conclusive between the parties, it is conclusive also as to third parties, except that it may be shown to have been obtained by fraud or collusion.

Wait, Fraud, Conv. § 270, says that when the judgment is conclusive between the parties it is "competent evidence tending to prove the debt, even as to third parties, until something is shown to the contrary by way of impeachment. A third party may, as a general rule, show that the judgment was collusive, and not founded on actual indebtedness or liability. Were the rule otherwise, the greatest injustice would result, since a stranger to the record can not ordinarily move to vacate the judgment or prosecute a writ of error or appeal."

Bump, Fraud. Conv. 576, states the rule to be as follows: "Judgment may be impeached collaterally by proof that the court had no jurisdiction, or that it was obtained by fraud or collusion, or that it was entered illegally, but not beyond this; and where a judgment in a personal action is not liable to either of these objections, whether rendered by default or confession, or after contestation, it is conclusive evidence to establish both the relation of debtor and creditor between the parties, and the amount of the indebtedness, and can not be collaterally impeached in another suit where such relation and indebtedness are called in question."

In Bigelow, Estop. 142, it is laid down that a judgment in favor of A. against B. can not be disputed by C., except on the ground that a fraud against creditors, of whom he is one, or against himself in some other relation, *e. g.*, as surety, has been committed, nor can the amount of the judgment be contradicted. Third parties can not object

when those who have exclusive right to settle a question have done so without fraud.

2 Black, Judgm. § 605, states the rule to be that a "judgment obtained without fraud or collusion is conclusive evidence in suits between creditors in relation to the property of the debtor; of the fact and the amount of the indebtedness of the latter." *Prima facie* only, according to Bart. Ch'y Pr. 537.

In the opinion in *Chamberlayne* v. *Temple*, 2 Rand. (Va.) on page 395, it is said that a judgment against donor establishes a debt against donee, unless impeached on the ground of fraud or for any other just ground. The words "any other just ground," are very indefinite in this instance.

In *Garland* v. *Rives*, 4 Rand. (Va.) 282, a case to set aside a fraudulent conveyance, it is held that the judgment against the grantor is *prima facie* evidence against the debtor or mere strangers, unless they can impeach it on the ground of fraud, or by showing that a full defence was not made, and can produce new proof showing that the debt was not due." This leaves the door quite widely open. See 2 Lomax, Dig. 341.

My own conclusion, on an examination of the many cases bearing on the subject, is that a judgment for a debt is, as between the judgment-creditor and other creditors, conclusive to establish the relation of debtor and creditor and the justness and amount of the debt, and can not be attacked except for fraud or collusion; and also that such judgment is evidence to the same extent against those claiming property that may be affected by the judgment derived from the judgment-debtor, for the reason that parties claiming property under the judgment-debtor are his privies in estate, since they claim under him the property affected by the judgment; and it is a cardinal rule applicable to judgments that they bind parties and privies, whether in blood, law, or estate. This rule is modified by our own statutes requiring docketing of judgments *etc.* But it is a rule that, to bind a man as a privy in estate, he must have acquired his interest after the judgment, not before. A grantee of land is not affected by a judgment against the grantor after the conveyance. 2 Black, Judgm.

§ 549; Freem. Judgm. § 162; Bigelow, Estop. 135; 1 Greenl. Ev. § 536; *Kitty* v. *Fitzhugh*, 4 Rand. (Va). 600.

The conveyance of the Sinking creek land by Fell to Skaggs was before Mathews's decree. Thus far I find no reason to charge the land conveyed by Fell to Skaggs with the amount of the Mathews debt, as fixed by the said decree. But Mathews brings forward another ground on which he would charge it with that amount. The facts pertinent to this point are as follows: This moiety of the Sinking creek land which Matthews seeks to subject to his debt was conveyed on 27th September, 1878, by Fell to Skaggs, for the consideration of five thousand dollars, the agreement between them touching the purchase-money providing that of said five thousand dollars "the sum of three thousand dollars is to be paid in cash, but the other two thousand dollars only as follows, as there are now certain judgments binding said land, and said Fell can not make title thereto free from incumbrances, that is to say, in manner and form as follows:

After the said Fell shall have satisfied all of said judgments, viz., by said A. S. Skaggs entering satisfaction of a certain debt, now amounting to one thousand nine hundred and fifty dollars, due from said Fell to said Skaggs, and secured by trust-deed upon what is known as the 'Creigh Property,' near the town of Frankford, and by paying to said Fell fifty dollars in money, with interest thereon from this date until paid. But it is expressly provided that no part of said two thousand dollars shall be paid as aforesaid, nor shall the same be considered as due, until the whole of the judgments on the land first above mentioned shall have been satisfied by said Fell as aforesaid." Fell receipted for three thousand and fifty dollars of the purchase money under the agreement. Of that money two thousand seven hundred dollars was paid to Fell with the understanding that it should be paid on said judgments, and he did pay two thousand five hundred and seventy five dollars of it thereon. The remaining three hundred and fifty dollars never went to Fell's hands, but by agreement Skaggs was to pay it and did pay it on said judgments. The facts agreed show that said Fell agreed to discharge

all such judgments, as also do said agreements show that fact. On September 28th, 1875, Lewis S. Creigh and Elizabeth, his wife, made a paper purporting to be a deed of trust on the tract of three hundred and fifty acres of land called the "Creigh Tract," to secure to said A. S. Skaggs a bond for one thousand five hundred dollars, with interest from September 28, 1875, given by Creigh and wife. This land was sold January 15, 1878, by James Withrow, trustee for Mrs. Creigh, and Mrs. Creigh and her husband to said J. P. Fell, for the consideration of five thousand dollars; and as a part of such consideration Fell assumed the payment of the debt due from said Creigh and wife to said Skaggs amounting then to one thousand eight hundred and forty four dollars and fifty eight cents, secured by said deed of trust, and this contract retained a lien for purchase-money. This tract was afterwards decreed to be sold as the property of Fell by the decree already spoken of as having been rendered on November 20, 1886, and was sold and purchased by said Mathews.

Now, Mathews contends that, under the terms of the sale by Fell to Skaggs of the Sinking creek land, Skaggs has in his hands one thousand nine hundred and fifty dollars, bearing interest from September 27, 1878, retained by him to pay judgments against that land, and to indemnify him against such judgments, which is ample to pay his debt according to the amount fixed by the decree, and that this is Fell's money; and as his decree is conclusive on Fell as to the amount of the debt, and as he does not plead usury, it does not lie in the mouth of Skaggs's representatives to plead it, and thus cut down the debt to the amount called for by the original judgment; and that to do so would not be for the protection of Skaggs's estate, but for Fell's protection against usury, and he has asked no protection.

Now, if we assume as true that, as between Fell and Skaggs, the contract allowing Skaggs to pay judgments would not be confined to the amount binding the land at the date of their contract, but that Skaggs would be justifiable in paying the debt in question as its amount was enlarged by said subsequent decree, yet that does not reach

the length of the question as made by the facts. If we could say that Fell would get any balance of the fund in Skaggs's hands left after cutting down the debt to the proportions of the original judgment, we might agree to the proposition of the appellee Matthews. If Skaggs had no interest in such balance, we might entertain this proposition. But it is the fact that the argument of the appellee treats this balance as if it were Fell's property, and as if Skaggs had no interest in it, which is the fault of that argument. If Skaggs, under his agreement of purchase from Fell, has the right to apply on the debt due him from Creigh any balance after satisfying judgments, he may insist that the amount of those judgments shall be as called for by them, as existing at the date of his purchase.

Then, has Skaggs (or, rather, have his representatives) a right to apply such balance to their debt? Fell, as part of the consideration for the three hundred and fifty-acre Creigh tract, had assumed to pay to Skaggs the debt due him from Creigh, and thus became personally bound for it; and afterwards he sold to Skaggs the Sinking creek land, leaving in Skaggs's hands one thousand nine hundred and fifty dollars to go on this debt if not required, or so far as not required, to pay judgments on said Sinking creek land. Such is the plain meaning of the contract. Had Fell paid such judgments, clearly he could not have demanded the one thousand nine hundred and fifty dollars; but Skaggs could have applied it on the Creigh debt. Skaggs had right against Fell to apply such balance on his debt due from Creigh, and to pay off the judgment of J. Whitehill assigned to Matthews at an amount fixed by its principal, eight hundred and forty three dollars, with interest at the rate of six per cent. per annum from the 29th day of December, 1877, and the costs of such judgment, and his administrators, or the land purchased by him of Fell and descending to his heirs, could not be charged with more.

It is urged here that said Creigh deed of trust itself creates no lien because of the inefficacy of the deed of trust to create a lien, for the reason that the land was vested in Withrow, trustee, for Mrs. Creigh, and Withrow is not a

party to the deed of trust; whereas, the conveyance to him as trustee provided that he must unite in any deed conveying it; and also because Mrs. Creigh did not properly acknowledge the deed. If even this be so, yet the fact remains that Fell received a valuable consideration in the conveyance to him of the three hundred and fifty acres from Creigh and wife for assuming, and he did assume, the payment of this debt. Mrs. Creigh out of the purchase-money devoted enough to pay this debt; and Fell could not himself be permitted to say, after thus being paid for paying this Creigh debt, that the deed of trust making it a lien was not effective to create a lien, disregarding the fact that both the bond and deed of trust create a personal debt as to Mrs. Creigh, and she, in thus devoting the proceeds of her land to it, still recognized it as a just debt. Though Skaggs was not a party to the contract between Fell and Creigh, yet he could sue Fell for his debt on his *assumpsit* of it, under Code 1887, c. 71, s. 2. See Browne, Stat. Frauds, 259, note 1, s. 166; *Hooper* v. *Hooper*, 32 W. Va. 535 (9 S. E. Rep. 937); opinion, page 670, in *Johnson* v. *McClung*, 26 W. Va.; Whart. Cont. § 785.

Let us now inquire whether the instrument made by Creigh and wife for a deed of trust is effectual to create a lien. The first reason assigned against its having such effect is that the deed from Allen S. Livesay and wife to James Withrow, trustee, conveys the land to Withrow to be held for the sole and separate use of Elizabeth A. Creigh, "expressly reserving, however, to the said Elizabeth A. Creigh the right to sell and unite with her husband and her said trustee in conveying all or any part of said lands whenever she may elect to do so;" and said deed of trust was made between Lewis S. Creigh and Elizabeth A. Creigh, his wife, of the first part, J. P. Fell of the second, and A. S. Skaggs of the third part; and Withrow is not a party to the deed, though at the foot of the deed below the signatures is a sealed writing signed by Withrow, trustee, of the same date with the deed, agreeing that the trust might be executed, and, in the event that a sale of the lands named in it should have to be made, he would unite in the deed. Plainly the grantors Livesay intended the land for

the absolute benefit of Mrs. Creigh, and to give her power to sell whenever she might elect to do so. The language of the deed does not plainly require her husband and trustee to unite to sell it. The grantors' purpose plainly was to confer a separate estate upon Mrs. C., and invest her with full power of alienation, vesting only the dry legal title in the trustee, to be subservient to the will of the *cestui que trust*, Mrs. C.

It does seem to me that a valid deed made by Mrs. C. and her husband would, without the trustee's being a party to it, transfer a good equitable title, and operate as an imperative direction to the trustee to hold the estate to the use of the purchaser, and to convey it to such purchaser, according to principles stated in *Averett* v. *Lipscombe,* 76 Va. 404; and that a court of equity would compel the trustee to convey the legal estate to the purchaser. Hill, Trustees, 278. Here is an instrument signed by husband and wife purporting to convey land to secure a debt, and approved by the trustee. All the concurrence by trustee and husband contemplated by the deed from Livesay is thus evinced, only that the trustee is not made a formal party so as to pass the legal title. But the intent of all parties is shown, and that intent fully meets the real design of the deed from Livesay. If such an instrument have a legal certificate of the privy examination and acknowledgment of the married woman, and be recorded, why should it not be an equitable mortgage, under the doctrine of courts of equity that any writing used for the purpose of binding property as security for a debt, though informal and insufficient as a common-law instrument, but showing that the parties intended it to operate as a mortgage or deed of trust, will be an equitable mortgage? *Wayt* v. *Carwithen,* 21 W. Va. 516; *Fidelity, etc., Co.* v. *Shenandoah & R. Co.,* 33 W. Va. 761 (11 S. E. Rep. 58); *Atkinson* v. *Miller, supra,* p. 115 (11 S. E. Rep. 1007.) Any instrument made by a married woman must, to bind the *corpus* of her real estate, be acknowledged duly and be recorded, before it can be at all operative, because otherwise it is void, unless the conveyance conferring the separate estate confers a mere power of appointment on her, and dispenses with privy examination, which I think the said deed from Livesay does not do. Withrow did not

acknowledge this instrument, but that is unimportant. He was only a dry trustee with no substantial estate beyond the legal title subject to the trust.

But it is said that the certificate of the privy examination and acknowledgment of Mrs. Creigh is faulty because it certifies that she appeared before the justice without saying that she appeared in a particular county, and certifies that she declared that she had willingly "signed" the deed, whereas it should have said "willingly executed." As to the first point, the certificate has the caption, "State of West Virginia, Greenbrier county, to wit." It will be presumed that the act occurred in that county, and that the officer did not do an illegal act by taking an acknowledgment out of his county. *Carpenter* v. *Dexter,* 8 Wall. 513; *Rackleff* v. *Norton,* 19 Me. 274; *Bradley* v. *West,* 60 Mo. 33; and see copious note touching acknowledgments of deed, *Livingston* v. *Kettelle,* 41 Amer. Dec. 168.

As to the second point, all the decisions say that a substantial compliance with the statute is sufficient. A deed, to be valid, must be signed, sealed and delivered to pass legal title; but a contract signed and delivered, though not sealed, even by a married woman, is effective as an executory contract, when duly acknowledged. The word "executed" would import all that is necessary to consummate a deed, but it does not in this question necessarily import delivery, for it often is acknowledged before delivery. This certificate says that the woman "came before me, and having been examined by me privily and apart from her said husband, and having had the deed aforesaid fully explained to her, she, the said Elizabeth A. Creigh, acknowledged the same to be her act and deed, and declared that she had willingly signed the same, and does not wish to retract it." Who can say that there is any question as to her intent to declare the instrument a completed act? The word "signed" is here tantamount to "executed." In *Pickens* v. *Knisely,* 29 W. Va. 1 (11 S. E. Rep. 932,) a certificate that the woman declared that she had willingly "acknowledged" the instrument, instead of saying she had willingly "executed" it, was held good. The words "signed and sealed," or "signed" only, have been held equivalent to

the word "executed" in certificates of acknowledgment of deeds. *Stuart* v. *Dutton*, 39 Ill. 91; *Jacoway* v. *Gault*, 20 Ark. 190. See 41 Amer. Dec. 178. Taking the whole certificate as to her acknowledgment, as we do in construing other instruments, and ought, as to these certificates, to do, as stated in the West Virginia case just cited, we see that she acknowledged the paper to be her act and deed, thus importing a complete act; and that she had willingly signed the same, thus indicating that the instrument in its then condition, having her signature and seal, was the act of her free will; and that she wished not to retract it, thus indicating that she still adhered to it as her act and deed; and we find it in the hands of the creditor, showing that it must have been delivered. It would be exceedingly technical to defeat the manifest intent of parties because the word "signed" is used instead of "executed." Here there is nothing left out intended to speak the meaning designed by the statute; only one word is substituted for the other; but in the common sense, as used here, it was designed to mean the same thing.

We hold, therefore, that said instrument created a valid lien on the land named in it for the debt named in it, so as to give Skaggs's right to apply on that debt any part of the one thousand nine hundred and fifty dollars in his hands after discharging judgment-liens on it. It, as also the bond secured by it, created a debt, and that would give Skaggs the right, as against Fell, to apply on it such balance.

But it is said that Skaggs's estate is barred of the benefit of this debt by force of the report of Commissioner Withrow, and the decree of November 20, 1886, confirming it, because there was an order to convene all persons holding liens on the land of Fell, including the Creigh tract of three hundred and fifty acres, on which the deed of trust rested, and Skaggs's administrators failed to prove it as a lien against that land, and especially as the commissioner in his report remarked, "it is presumed that the debt due from L. S. and Mrs. E. A. Creigh to A. S. Skaggs has been paid;" and there was no exception to the report, and as said administrators did prove another debt due their decedent from Fell, the judgment-debtor against whose land the

proceeding was.   It is claimed that section 7, c. 139, Code 1887, has the effect to preclude Skaggs' representatives from claiming this debt.   Does this statute, even as to the land of the judgment-debtor proceeded against, estop and conclude, for failure to present them, not only liens created by the judgment-debtor proceeded against, but also all other liens created on such land by former owners, no matter how far back in the chain of the title ?   Must the creditor watch every alienation his debtor and his vendees may make, follow up the land through years, and take notice of a suit against its latest owner, though a stranger to him ? I do not think so.   They may come in, to be sure ; but if they do not they are not barred, unless made formal parties.   If in such case it be said that the purchaser would suffer from them afterwards, the reply is they must be sought out and made parties under the the common rules of chancery practice. If we treat the said deed of trust as valid, the trustee and *cestui que trust's* administrators were necessary parties, under *McCoy* v. *Allen*, 16 W. Va. 732, and *Bilmyer* v. *Sherman*, 23 W. Va. 556, in the former case the opinion saying :   "Only the undefined class of judgment-creditors holding liens similar to the plaintiff can be made in such case *quasi* parties.   If the trustee holding the legal title to the land and his *cestui que trust* are not made formally defendants, they can not, by any such decree, be made *quasi* parties, and can not be bound by any decree of the court."

Those cases were before the act of 1882 as to suits to enforce judgment-liens, and as the language of section 7, under that act, is liens "by judgment or otherwise," and in the form of notice, "all claims held * * * which are liens on his real estate," any lien in any manner arising is contemplated ; but, in cases where the legal title is outstanding in a trustee, it is still necessary to make the trustee, and, I should say, also the beneficiary, under the deed, formal parties.

Again, the statute bars those not presenting their claims only from participation in the proceeds of the sale of the land, not from the personal debt, unless that be expressly involved in the case, in the pleadings, or made so by contestation before the commissioner.

Certainly, therefore, the personal obligation of Fell under

his *assumpsit* of the Creigh debt, and under his stipulation to remove judgments from the Sinking creek land, so as to let the fund go the Creigh debt, could not be wiped out by the failure to prove the debt before the commissioner. As against Fell under this personal *assumpsit* it was no lien, and therefore as such personal debt it need not have been proven, as the statute says that there may be proven "any claim he may have against the judgment-debtor, which is a lien on such real estate," and in the notice it says, "to present all claims held by you, and each of you, against the said A. B., which are liens on his real estate." And the statute plainly does not intend to bar the personal demand of a creditor against his debtor for failure to prove his lien, but only to deny him participation in the proceeds of the land sold, so far as other creditors of said judgment-debtor holding liens on his real estate, who have not so failed, are concerned, and so far as the creditors at large of said judgment-debtor are concerned. And, if this debt be viewed as a lien under said deed of trust, it is not a debt of Fell—a lien created by him—but one created by a former owner of the land, and I do not think there was compulsion under the statute to prove it; for the language above quoted as to the debts provable uses the words, "any claim he may have against the judgment-debtor," and in the notice the language, "against the said A. B.," (the judgment-debtor.)

Where persons are made parties to a suit under this statute, the effect of proceedings in it may be broadened by the allegations touching them in the pleadings, and would be dependent thereon; but, where they are not formal parties, I regard the proceeding as in the nature of an *in rem.* proceeding, operative in the particular cause as to the particular property disposed of by the decree. Any proceeding trenching upon that important principle of law that, before a person can be bound by a judicial proceeding, he shall be made a party, and served with process, and informed by pleadings of the matters that may prejudice him, are dangerous, and we should not give this statute a scope by construction towards that result not demanded plainly by it. I conclude that the proceedings in this cause prior to the amended bill, making the personal and real represen-

tatives of Skaggs formal parties, do not prevent them from having the benefit of their Creigh debt. The case made by the amended bill is to be treated, as to these matters and parties, as if it were another suit. The fact that Skaggs's administrators proved before the commissioner a debt against Fell, which they were bound to prove, does not preclude their claim to the Creigh debt, which they were not bound to prove.

For these reasons I am of opinion that the one thousand nine hundred and fifty dollars in Skaggs's hands is not to be regarded as Fell's money, and as if Skaggs had no interest therein; but that any balance of it, after paying judgments binding the Sinking creek land, Skaggs has right to apply on the Creigh debt due Skaggs under the terms of his purchase long before the decree for the Mathews debt; and that Mathews has right to hold the land conveyed by Fell to Skaggs liable, not for the amount as fixed by the decree, but for the amount of the judgment of J. Whitehill against J. P. Fell, eight hundred and forty three dollars, with interest from the 29th day of December, 1877, and three dollars costs, subject to be credited with the amount applicable thereon from the sale under decree in the case, two hundred and eighty six dollars and one cent, as of 5th September, 1888, without prejudice to the right, if any, of Skaggs's administrator under said deed of trust from Creigh and wife to J. P. Fell, trustee, dated 28th of September, 1885, to secure the debt therein specified to A. S. Skaggs against the land therein described.

The appellants ask this Court to dismiss the amended bill, and refuse relief to Mathews, because, while he has the right to subject said Sinking creek land to his judgment, yet he became the purchaser of the tract of land on which said deed of trust rests, and that it is of more value than his judgment, and is bound for said trust. This can not be done in this case. The debt of Mathews is only a charge on the Sinking creek land, not a personal debt on Skaggs; while Skaggs's debt under the deed of trust, if a charge on the three hundred and fifty acres, is no personal debt against Matthews. We do not consider that we have before us the question of the liability of the three hundred and fifty acres, and therefore do not pass on it,

but leave it without prejudice to the rights of Skaggs's estate from this decision. But the decree is erroneous also because it directed the half of the land conveyed by Fell to Skaggs to be sold, whereas it should have sold first the undivided half of the one hundred and eleven acres conveyed by Fell to Crookshanks, because Fell's conveyance to Crookshanks was later in date. The reason for selling the Skaggs land first given in the decree does not exist; that is, that Skaggs retained a sum of money for and belonging to said Fell. That fund, as shown above, was retained to indemnify Skaggs against judgments, and next for application on his Creigh debt. He retained it for his own benefit, not to protect Crookshanks against the ordinary rule by which land last sold is to be first subjected to judgment-liens. It was just as though Skaggs had paid the purchase-money in full in cash.

The decree of June 26, 1890, is reversed, and cause remanded to be further proceeded with according to principles herein indicated, and in other respects according to principles governing courts of equity.

REVERSED. REMANDED.