# CHARLESTON.

BANSIMER *v.* FELL *et al.*

SKAGGS'S ADM'RS *v.* MATHEWS *et al.*

Submitted January 20, 1894.—Decided April 11, 1894.

1. DEED OF TRUST—PARTIES.
    In a suit under section 7, c. 139, Code 1891, to subject land to a judgment-lien if there be liens thereon by deeds of trust, the trustee and creditors therein must be made formal parties; and they do not become *quasi* parties so as to affect their rights by notice to lien-holders.

2. DEED OF TRUST—WAIVER.
    One will not be held to have waived a deed of trust on land and be compelled to look to merely personal security of a third party, unless the waiver be express, or the intent to waive be very clear and plain.

3. CONTRACT—INDEMNITY—ACTION.
    If one undertake to indemnify another against liens upon his land by paying them and fail to pay them, an action at law or in

some cases a suit in equity may be maintained by the party indemnified against the other party for the breach of such undertaking before payment of such liens by the covenantee.

4. EQUITY.

Where a court of equity has all the matters involved and all the parties interested before it, though a liability would fall on one person or property first, the court will in the first instance place it on the person or property ultimately liable thereto.

A. C. SNYDER for appellant:

I.—*A surety for the payment of money can not call on his principal until he has paid the debt.*—Serg. Meas. Dam. (5th Ed.) 341, 342; Id. 344; Id. 346; Id. 351; 12 W. Va. 655; 2 B. & Ald. 51; 22 Gratt. 750; Brandt Surety & Guar. 253.

II.—*Parties.*—Code, c. 139, s. 7; 35 W. Va. 32-34; 16 W. Va. 732; 23 W. Va. 656; 22 W. Va. 444; 17 W. Va. 656; 16 W. Va. 625; Code, c. 130, s. 7.

J. W. HARRIS for appelees :
*Parties.*—23 W. Va. 724; 26 W. Va. 636.

BRANNON, PRESIDENT :

In 1890 W. G. Bansimer brought a chancery suit in the Greenbrier Circuit Court against John P. Fell, as sole defendant, to assert the lien of a judgment in favor of Bansimer against Fell upon a tract of three hundred and fifty acres of land, called the "Creigh Tract," owned by Fell. The suit was in behalf of Bansimer himself and all other holders of liens against Fell's land; and under a reference to a commissioner to ascertain such liens a report was made finding certain liens as existing on said tract, which report was confirmed. The liens reported were decreed against the land, and it was sold and purchased by A. F. Mathews. One of the judgments reported against the land was a judgment in favor of Whitehill against Fell, which had been assigned to Mathews. The land of Fell did not bring enough to fully satisfy the Whitehill judgment, and then an amended bill was filed to enforce it and other liens unpaid against other lands, which Fell had once owned, but had sold and conveyed; one being the undivided moiety of a tract of seven hundred acres, called

the "Sinking Creek Tract," which moiety had been conveyed by Fell to A. S. Skaggs. The moiety of said Sinking Creek land is liable to the balance of the Whitehill judgment, called now the "Mathews judgment," as it had been decreed to him as assignee in the decree against Fell's land. Skaggs having died, his heirs, to whom the moiety of the Sinking Creek land descended, were made parties to the amended bill. The tract of land sold as the property of Fell under the decree as above stated was land which had been conveyed by Allen S. Livesay to James Withrow, trustee, to be held in trust for the separate use of Elizabeth A. Creigh, wife of Lewis S. Creigh ; and Creigh and wife executed a deed of trust to said Fell, as trustee, upon three hundred and fifty acres of it, to secure to A. S. Skaggs payment of a debt of one thousand and five hundred dollars. After the execution by Creigh and wife of said deed of trust to Skaggs this land was sold to said Fell, he assuming the payment of the deed of trust debt to Skaggs. Later Fell being also owner of the said moiety in the other tract—the Sinking Creek tract—sold and conveyed that moiety to said Skaggs at the price of five thousand dollars; the agreement of September 27, 1878, as to the purchase-money providing, that of said five thousand dollars the "sum of three thousand dollars is to be paid in cash, but the other two thousand dollars only as follows, as there are now certain judgments binding said land, and said Fell can not make title thereto free from incumbrances—that is to say, in manner and form as follows :

"After said Fell shall have satisfied all of said judgments, viz. by said A. S. Skaggs entering satisfaction of a certain debt, now amounting to one thousand nine hundred and fifty dollars, due from said Fell to said Skaggs, and secured by trust deed upon what is known as the 'Creigh Property,' near the town of Frankford, and by paying to said Fell fifty dollars in money, with interest thereon from this date. But it is expressly provided that no part of said two thousand dollars shall be paid as aforesaid, nor shall the same be considered as due, until the whole of the judgments on the land first above mentioned shall have been satisfied by said Fell as aforesaid."

Now, after the amended bill had been filed by Bansimer to subject the moiety of the Sinking Creek land conveyed by Fell to Skaggs to the balance of the Mathews debt against Fell, and decree had been made in the Circuit Court and this Court holding the Sinking Creek land liable to said Mathews debt, the administrator of Skaggs filed a bill in the Greenbrier Circuit Court to enforce the said deed of trust, which had been given by the Creighs on the Creigh tract, which had been sold under decree and bought by Mathews. The theory of this bill is that the Creigh land in Mathews's hands was liable to the said deed of trust, and the Sinking Creek land in the hands of Skaggs's heirs or their alienees was liable for the balance of the Mathews debt against Fell, and that a sum equal to the Mathews debt should be set off against it out of the deed of trust debt in favor of Skaggs's estate, and thus discharge the Mathews debt, and release the Sinking Creek land from it, because the Creigh land in his hands was liable for the larger deed of trust debt in favor of Skaggs; and, if this could not be done, that the deed of trust be enforced against the Creigh land. The two cases were heard together, and a decree was made which held the Creigh land liable under the deed of trust, and credited the Mathews judgment upon the said Skaggs deed of trust, and declared the Mathews debt satisfied. Mathews appealed.

One of these cases was heretofore before this Court. *Bansimer* v. *Fell*, 35 W. Va. 15 (12 S. E. Rep. 1078). The court then held that the debt under said deed of trust in favor of Skaggs against the Creighs was not barred or precluded by the convention of lienors and the decree subjecting to sale the three hundred and fifty-acre Creigh tract as the property of Fell. The reasons given for such holding will be found in the report above cited. They need not be repeated. I will add, however, as to one of these reasons—that is, that neither the trustee nor the creditor in said deed of trust were parties when that convention and decree took place—that subsequent decisions of this Court have held, that notwithstanding the amendments made by chapter 126, Acts 1882, in section 7, c. 139, of the Code in relation to the convention of lien holders, to affect a credi-

tor under a deed of trust by such convention the trustee and creditor must be formal parties and do not become *quasi* parties.

In *McMillan* v. *Hickman*, 35 W. Va. 705 (14 S. E. Rep. 227) it was held that in a suit to subject a debtor's land to a judgment, lien creditors known to the plaintiff, and disclosed by the judgment lien docket or records of the court of the county in which the land lies, must be made parties, and that where there are liens by trust deeds the trustees must be made formal parties, and can not be made informal parties by publication. See also, *Turk* v. *Skiles*, 38 W. Va. 404 (18 S. E. Rep. 561). And at this term it was held, in *Bank* v. *Watson* (19 S. E. Rep. 413)—a case where there was a convention of lienholders—that the trustees and beneficiaries must be formal parties. The position that any judicial action can have effect to prejudice persons or rights in no way present, when their presence is necessary, is untenable.

The letter of section 7, c. 139, requires the trustee and creditor to be made parties. In the brief of appellant's counsel it is contended, that this requirement, that the trustee should be a party, is satisfied in the fact that Fell is trustee in the Creigh deed of trust securing Skaggs, and he was sole defendant in the original bill and thus was a party; and, it is asked, what more could have been done? The answer is, that Fell could have been made a party in his right as trustee, and the rights under the deed of trust could have been set up in the bill, and the creditor under the trust could have been made a party. This thing could and should have been done. Fell was the sole defendant, not as trustee, but only in his own right, as debtor under judgments asserted against his land. He was not mentioned as trustee. The deed of trust was not mentioned. The creditor under it, and whether or not he had been satisfied, were not mentioned. As the cases hold that they are necessary formal parties, I am unable to see how a proceeding or decree can be a bar against a man and his right, when he is not a party to the bill, nor his right mentioned therein, and the law is that, to constitute a bar, both the man must be a party, and his right must be alleged in the

pleading. *Bland* v. *Stewart*, 35 W. Va. 518 (14 S. E. Rep. 215); cases cited in *Cook* v. *Dorsey*, 38 W. Va. 199 (18 S. E. Rep. 468). In fact, further, the trust conferred on the trustee only equitable title; the dry legal title being outstanding in Withrow, trustee in the deed from Livesay, and he was not a party. The legal title and the equitable title both outstanding; only the debtor entitled to the equity of redemption a party. The original bill of Bansimer expressly stated that Fell had only equitable title.

The former decision adjudicated a second matter and is *res judicata* as to it; that is, that said deed of trust was valid. Therefore, the inevitable sequence is that it constitutes a lien on the land conveyed in it for the debt secured by it to Skaggs.

It is suggested—but, seemingly, not urged—that in the sale of the Sinking Creek land by Fell to Skaggs Fell assumed payment to Skaggs of the deed of trust (Creigh) debt, and Skaggs recognized this *assumpsit* and spoke in the contract of the debt as one due from Fell and looked no longer to the Creighs, and Fell thus made it a lien on his own land, and it was a charge on the Fell land sold under the decree.

First, in the sale by Fell to Skaggs of the Sinking Creek land Fell did not assume the Creigh debt. He had before that assumed it in the contract between the Creighs and himself, selling to him the Creigh land; and he made sale of the Sinking Creek land to Skaggs to discharge his obligation, leaving in Skaggs's hands one thousand nine hundred and fifty dollars of the purchase-money to accomplish it. But, if we turn back to the agreement given above, we shall see that it made no lien on the land of Fell, and that Fell was to pay off judgments binding the Sinking Creek land before the one thousand nine hundred and fifty dollars left in Skaggs's hands should be applied to the Creigh debt, and that the one thousand nine hundred and fifty dollars should never be considered as even due from Skaggs or paid on the Creigh debt, until the satisfaction by Fell of judgments endangering the Sinking Creek land in Skaggs's hands, and that the writing expressly referred to the debt as secured—still secured—by the deed of trust. Fair con-

struction of the writing, far from showing that Skaggs relinquished his deed of trust lien and looked to Fell to pay it, shows that he still held to it, because he never agreed to apply the fund in his hands to discharge it, until the incumbrances should be removed. The obligation on Fell to pay the deed of trust arose from his contract with Creigh when they sold him the Creigh land, and Skaggs was no party to it. In no manner did Skaggs ever do any act indicating that he looked to anything for his debt but to the fund left in his hands as part of the purchase-money for the Sinking Creek land, and, in case any of it should be necessarily used to remove liens on it, then he would fall back on his deed of trust on the Creigh land. No court of equity would make Skaggs look to the mere personal obligation of Fell under his stipulation with Creigh, and give up his security under the deed of trust. To enforce such a waiver of lien it must be express, or the intent to do so must be clear and distinct. *Coles* v. *Withers*, 33 Gratt. 186 ; 1 Jones, Mortg. § 232. And even had he done so, as Fell utterly failed to pay the liens and became unable to do so, would not equity return to Skaggs the security of the deed of trust ?

Here I will pass upon the demurrer of Mathews to the bill of Skaggs, which demurrer was overruled. The contention of Mathews is, that this bill was filed prematurely, as, when it was filed, the moiety in the Sinking Creek tract had not been held liable or sold for any judgment-liens existing against it as the property of Fell, and that after the agreement of September 27, 1878, between Fell and Skaggs, the latter "had no right to look to the Creigh land or his trust deed for any purpose except for indemnity for actual loss then already sustained of some part of the one thousand nine hundred and fifty dollars of purchase-money retained by him, or of the land bought by him from Fell, and taken from him for the payment of debts of Fell which were liens thereon." In other words, that before suing Skaggs must wait until his land had been sold away from him for liens against Fell, or at least until it had been subjected thereto, and Skaggs had discharged them out of the fund in his hands. It is sought to liken the

case to that of a surety suing a principal before payment by the surety, but it is not like it. And the proposition as to a surety is questionable. This is a suit in equity with all the parties present, not an action at law by Skaggs against Fell for money paid for him, or breach of covenant to indemnify. The doctrine asserted to sustain the demurrer ignores that, which in many instances favorably distinguishes equity remedies over legal remedies, the exercise by equity courts of preventive or anticipative justice, and that which it often (invariably in proper cases) exercises— the power to place the burden in the first instance, just where at last it must rest. If the agreement be treated— as it is treated by the brief for appellant—as a covenant or undertaking by Fell to indemnify Skaggs against the liens on the land (that is, to pay them) Skaggs could maintain an action even at law because of non-payment; for it is laid down as law that if by the covenant the covenantor undertakes to pay money, or do a particular act (not simply to indemnify) and there be a failure to make such payment or do such act, an action lies, and the plea of *non damnificatus* is no answer to such action. 2 Rob. Pr. 116; Sedg. Dam. 304. But in equity such jurisdiction is above question, and this case within it.

Under his covenant of general warranty Fell was bound to remove liens. A fund was left by him in Skaggs's hands, with which to remove liens if Fell did not. He had a right to apply purchase-money yet in his hands to remove liens, both without special contract, under the law, as manifested in every day's practice, and under special agreement. He had waited in vain for Fell to remove the liens from September 27, 1878, till August, 1891, and Fell was insolvent. There was the amended bill in the Bansimer Case, filed for the purpose of selling Skaggs's land sold him by Fell for those liens, under which it once had been subjected, and the decree subjecting it had been reversed, and the case sent back, with an actual adjudication by this Court that the land was liable for Mathews' lien, and for further hearing after bringing in new parties, and there was every reason to suppose that the land would be subjected. Mathews owned a debt binding Skaggs's Sinking Creek land.

He owned, also, the three hundred and fifty acres bound for Skaggs's deed of trust. In this state of things, Skaggs' representatives file a bill to subject the three hundred and fifty acres to the deed of trust, to the extent of raising enough to pay the liens on the Sinking Creek land, or, in the alternative, as Mathews owned a debt binding that land owned by Skaggs, and also owned the Creigh land, which was indebted to Skaggs, if the court should be of opinion that the burden of relieving the Sinking Creek land from incumbrances rested on Mathews, that decree be rendered imposing the burden on him to discharge said liens, and apply the residue of the trust debt, and relieve Skaggs from further liability, and for general relief. Could not Skaggs's representatives have filed a cross bill for this purpose in the Bansimer Case? Surely they could. This bill answers all the ends of a cross bill. It is good as a cross or original bill. Now, if Skaggs had used the purchase-money in his hands to pay Mathews's debt, could he not have turned right around, and subjected the Creigh land owned by Mathews to the deed of trust to reimburse him for money paid to discharge liens? Why, then, might he not take the more prudent course of asking a court to find and fix those liens, without his undergoing peril in so doing, and as the liability must, in the second place, fall on Mathews's land, have the court to place it there in the first instance—both suits being heard together, and all parties present, and Mathews agreeing that, if his lands are adjudged liable, the burden might be placed on him by declaring his judgment satisfied? See Bart. Ch'y Pr. 282, 283.

The decree rendered in the case is, in truth, nothing but the legal result and enforcement of the decision heretofore rendered by this Court on the same facts, and the same is affirmed.