# CHARLESTON.

Lambert *v.* Nicklass *et al.*

Submitted Sept. 10, 1898—Decided Dec. 7, 1898.

1. Agister's Lien—*Live Stock.*
   One who keeps a horse or other live stock for compensation has a lien thereon for such compensation by Code 1891, c. 100, s. 15. (p. 528).

2. Agister's Lien—*Innkeeper—Attachment.*
   An innkeeper or keeper of live stock who has a lien on the property does not lose the lien by levying an attachment upon the property. (p. 528).

Appeal from Circuit Court, Berkeley County.

Suit by Walter J. Lambert against B. Nicklass and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

W. H. Travers and Wisner & Woods, for appellant.

Flick, Westenhaver and Baker, for appellees.

Brannon, President:

Lambert kept a horse and buggy for Brown, claiming a lien for the keeping, refusing to let Brown take them without payment. Brown agreed that they should stand good for their keeping. Brown became insolvent and assigned for the benefit of creditors, but did not include this property in his assignment. Lambert sued for keeping the property, levied an attachment on it, the officer leaving it

in his possession.   The attachment was quashed, but personal judgment was rendered for the debt.   Afterwards, Nicklass Bros. & Co. levied an execution against Brown on the property, and Lambert procured an injunction against selling, and the court held that Lambert had no lien, dissolved the injunction, and gave the execution preference over Lambert's lien, and Lambert appealed.

Lambert claims a lien for keeping a horse and buggy at his stable belonging to Brown, under section 15, chapter 100, Code, that "persons keeping live stock for hire shall have the same rights and remedies for the recovery of their charges therefor as innkeepers have." It is questioned by counsel whether Lambert ever had any lien. Counsel say that agisters and liverymen have no lien at common law, as is true.   13 Am. & Eng. Enc. Law. (1st Ed. 943).   They say that an innkeeper has a lien on the goods of his guest, as he has sole and exclusive possession, not concurrently with the owner; but that one who merely feeds and takes care of a horse has not sole possession, but one concurrent with the possession of the owner; that only exclusive possession gives a lien.   Now, I see little difference as to possession. "The transient guest sometimes takes his horse and uses him during his stay at the inn, as does one who merely keeps his horse at the stable. It is the keeping the guest and the keeping the horse that gives rise to the lien, not alone possession, that being only the means of enforcing pay." It is very plain to me that the statute intended to remedy the defect of the comon law, and give any one keeping live stock for compensation a lien for such compensation,—a lien like that of the innkeeper. Of course, it does not mean one who keeps stock to be hired, as there the compensation goes to the other party for use of the stock; but it means to give a lien to any one who, for hire or compensation, keeps stock.   Lambert clearly had a lien.

But it is said Lambert waived or forfeited his lien by bringing action for the same demand before a justice, and levying an attachment upon the property.   First, it is argued that judgment in this action merged and destroyed the lien.   Judgment does merge the cause of action, so that it cannot be sued on again; but I understand that in law

the debt is one thing and its lien on given property another thing, and that judgment does not destroy the lien. The creditor may enforce both, and his election of one does notexclude the other as a remedy. "Though the debt is merged in the judgment, its nature is not destroyed or affected; and if the debt was one for which a lien was given at common law or by statute, the lien continues after judgment." 1 Jones, Liens, s. 1032a.

But it is claimed with more confidence by counsel for appellees that the lien given by this statute is like that given an innkeeper by common law, and that, as loss of possession destroys the innkeeper's lien, so the levy of the attachment took away from Lambert the possession, and gave the officer possession, and thus lost Lambert's lien. There is quoted to us the passage from Jones on Liens (section 1014), saying: "An attachment of goods by one who claims a lien on them, to secure the same debt for which the lien is claimed, is a waiver of the lien. The attachment is in effect an assertion that the property belongs to the defendant. Having made the attachment, he is estopped from afterwards asserting the contrary." Also Hermann's Law of Executors, (sec. 172), saying : "Taking property in execution at the suit of a party having a lien thereon destroys the lien by changing the possession from the bailee to the officer, though the property is left with the party. The possession must of necessity vest in the officer in order to enable him to sell the property." And citations from 13 Am. & Eng. Enc. Law, 586, and Jones, Liens, s. 328, to the effect that a carrier's lien is lost by his attaching property. As to the clause from Jones, that "the attachment is an assertion that the property belongs to the defendant." I will say that there is no force in it, because by claiming a lien the plaintiff asserts that it belongs to the defendant as much as by attaching it. He asserts the same thing by both lien and attachment, and no estoppel can, therefore, be based upon any contradiction between the two. Very little authority is cited for the above-cited doctrine ; the same is cited for all the propositions above given. Regarding it unreasonable, I have sought to trace its origin, and find it in an English decision in 1828 (*Jacobs* v. *Latour*, 5 Bing. 130), holding that where one entitled to a lien as stable

keeper and trainer sued and sold and bought the horses under execution, he could claim, in trover against him by an assignee in bankruptcy, only under the execution, not under his lien, his lien being waived by the execution. *Legg* v. *Willard*, 17 Pick. 140, seems to hold that when one has a lien, and attaches for the same debt, his lien is gone; but it is a mere assertion, and no discussion of any authority. *Wingard* v. *Banning*, 39 Cal. 543, is cited for the proposition; but there the affidavit declared the creditor had no lien, which was an express renunciation of it. It seems only three out of five judges concurred in the opinion. In *Arendale* v. *Morgan*, 5 Sneed, 703, the question is considered, and the court refused to follow that doctrine, and held that where one has property in pledge for debt, and parts with possession with intent to abandon the lien, as if he agrees that it be attached at the suit of a third person, it is gone; but not so where he attaches for his own debt. This is the true position.

To sustain this loss of lien we must place it on one or the other of two ideas,—intentional waiver, or from loss of possession. As to the first, authority is abundant to show that one will not be held to waive a lien unless the intent be express or very plain and clear. The presumption is always against it. Merely taking a new security does not. *Bansimer* v. *Fell*, 39 W. Va. 448, (19 S. E. 545); *Hopkins* v. *Detwiler*, 25 W. Va. 734, 748; *Hess* v. *Dille, Id.* 97. So with the innkeeper's lien, 11 Am. & Eng. Enc. Law, 49.

And as to the loss of lien by loss of possession: An innkeeper having a lien has no right to sell the property without a judicial proceeding. If he does, he is liable to an action of trover for its unlawful conversion, besides losing his lien. His only remedy is to hold it till payment. Unreasonable this is; but, where no statute can be found providing for a sale, it is so, by much authority. 11 Am. & Eng. Enc. Law, (1st Ed.) 46; Jones, Liens, s. 523. In fact, on the mere strength of lien, he can sue neither at law nor in equity, if there is no statute to allow it. It is different from a pledge or pawn. 13 Enc. Pl. & Prac. 127; 1 Jones, Liens, ss. 1033, 1038. The horse is in the innkeeper's stable eating its head off, and he has no remedy. Suppose,

however, by reason of nonresidence or other cause, the innkeeper can sue out an attachment, why shall he not do so? He is not thus waiving, but enforcing, his lien. Why it should be said that, when the officer levies on the property to enforce this lien, the innkeeper loses his lien because he gives up possession, I cannot see. The officer is his agent for this purpose. To say so is technical in the highest degree, and defeats justice. The innkeeper is not surrendering possession to the owner, nor to an officer acting in furtherance of his demand. He could bring a suit, as shown above, without forfeiting his lien; and by resorting to an attachment he simply availed himself of a fact giving him the right to attachment to enforce a debt for which there was a lien, using a cumulative remedy. Houck on Liens (section 6) says, "If possession is relinquished after the lien attaching, the lien is gone; for, by parting with possession, the creditor shows that he trusts to the personal credit of the debtor," and cites numerous authorities. This is so where he lets the owner or an officer under process for debts of others have possession. Then you can fairly say that he looks to the debtor only; and that as Houck says, is the reason why surrender of possession destroys the lien. But how can we say that Lambert intended to look to the personal credit of Brown by an act which told the very reverse, and told that he looked to the property for pay, not to Brown? Furthermore, Brown expressly pledged the horse to Lambert for his keep. Lambert could sell it as a pawn. This he could do by agent, and the agent's possession would be his. Is the officer anything but his agent? He is responsible for the officer's tresspass, because he acts for him. Judge Story condemns this doctrine as not well established, and says the Massachusetts ruling was local to that state. Story, Bailm. s. 366. In *Townsend* v. *Newell*, 14 Pick. 332, one had goods, with right to lien, and an attachment was levied in favor of a creditor, and he refused to give them up, but kept possession, and gave a receipt to the officer for them. Later he levied an attachment for his own lien debt, still retaining possession, but receipting to the officer for the goods. It was held that the lien was not lost. There, as in this case, the officer let the lien owner keep the goods in

his custody.    In that case, it is true, he expressly claimed his lien: but who imagines that Lambert intended to give up his lien?    His attachment itself speaks the negative.

In that case, after levy, it was as much the officer's possession as in this, and the court did not give it the force of forfeiture of lien, but said, as the party did not intend to surrender it, it still held good.    There is no evidence that Lambert intended to give up his lien, and if it stands on intention, and not on loss of possession, he who asserts such intention must make it clear.    In *Whitaker* v. *Sumner*, 20 Pick. 399, where one having a pledge allowed a levy for a debt once owned by him and debts of strangers, he was held to have lost the lien; but Chief Justice Shaw was careful to say, "We would not be understood hereby to hold that an attachment under all circumstances, though made by the party holding the pledge, or by his consent, would be a waiver of the lien."    I have not said anything about jurisdiction in equity, as the question was not raised or discussed.    Decree reversed, and the case is remanded, with direction to the circuit court to enter a decree allowing Lambert's debt as a lien, to be paid out of the proceeds of the property, in preference to the execution of Nicklass Bros. & Co.

*Reversed.*